REINKE, Appellant, v. PERSONNEL BOARD, Respondent.

*No. 217. Argued November 3, 1971.—Decided December 2, 1971.*
(Also reported in 191 N. W. 2d 833.)

---

[1] *Court v. State* (1971), 51 Wis. 2d 683, 711–713, 188 N. W. 2d 475.

124

For the appellant there were briefs by *Lawton & Cates* and *George E. Aumock, James R. Hill,* and *Bruce M. Davey,* all of Madison, and oral argument by *Mr. Aumock.*

For the respondent the cause was argued by *Robert J. Vergeront,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. It is the opinion of this court that the judgment must be reversed and the cause remanded to the Personnel Board. Therefore, it is necessary to review the record in considerable detail.

January 1, 1969, appellant was on duty as a counselor in cottage 5 of the Oregon School for Girls. The normal bedtime at the school is 10 p. m., at which time it is the duty of the counselors to shut the door to each bedroom. On the night in question, the bedtime hour was extended to after midnight because it was New Year's Eve. The alleged slapping took place shortly after midnight, while appellant was closing the bedroom doors on the second floor of the cottage. A number of girls had congregated in the hallway and as appellant approached the group, Linda, one of the inmates, asked her if she could kiss her goodnight. A kiss was defined within the institution as a touching of foreheads, and appellant consented to this. Thereafter, Linda and Emilia, another inmate, began to engage in symbolic gestures, placing their knees together and embracing their right hands. Appellant was asked if she knew what the latter gesture meant. Emilia told her it was symbolic of sexual intercourse. Appellant began to walk away but was followed by Emilia. She then reached out with her hand which came in contact with Emilia's cheek and said, "Barely five minutes into the New Year and we have to talk so

filthy." The girls then went to their rooms and appellant closed the doors. Appellant's testimony was corroborated by Joyce, an inmate who allegedly was present during the entire incident. She testified that after Emilia had mentioned "sexual intercourse," appellant tapped her on the side of the face. The witness was of the opinion that Emilia did not get slapped.

Emilia testified that she and Linda had rubbed knees together but they had not embraced hands. She denied saying the words "sexual intercourse," contending that the words had been uttered by someone else. She testified that appellant slapped her, pushed her into her room and slammed the door. Her testimony was corroborated by Linda, who stated that she had heard the slap. Emilia also testified that she later observed marks on the side of her face where she allegedly had been hit. She attempted to report the incident the following day but was informed by another inmate that Rex Duter, superintendent of the school, was unavailable. January 2d, she again attempted to see Duter but neither he nor Richard Meyer, assistant superintendent, was available. She was referred to Mr. Griffin. Later that same afternoon, the appellant came to her room and allegedly apologized for striking her. She stated that she did not discuss the incident with any of her girl friends. However, there was testimony that Emilia told the girls she observed marks on her face from the alleged slapping and that the girls had talked her into reporting the incident. She further testified that when the incident was later discussed at a conference with supervisory personnel, that appellant stated she did not feel that appellant's gesture was a slap.

Lee Hartley, a welfare administrator, testified that on January 2d, at the community meeting (a regular morning meeting of all the girls), the question came up as to what would happen if a counselor hit a girl. However, no discussion was had on the subject as it was im-

mediately dropped. Later in the day, several of the girls mentioned that something had happened and then Emilia and Linda asked to see Meyer. Meyer was out of town so the girls were referred to Griffin. Hartley briefly talked to appellant and asked her what had happened. As he recalled, appellant told him that she had struck a girl. The next morning at the community meeting, the question of a counselor striking a girl again was brought up. Once again the subject was dropped without discussion. Immediately thereafter, a conference was held between Hartley, Meyer and appellant. At this conference, Emilia and Linda were interviewed outside the presence of one another. Each girl related to them what had happened on the night of the incident. Both girls stated that appellant had struck Emilia and pushed her into her room. Appellant stated that her story was essentially the same as that of the two girls; however, after the meeting, and outside the presence of Meyer, appellant told Hartley that she had not slapped Emilia; rather, that she had simply touched her.

Meyer testified that he first heard of the incident on the morning of January 3d from Griffin. He testified as to the meeting between himself, Hartley and appellant, at which the two girls were individually interviewed. Emilia and Linda explained what had happened, stating that appellant had slapped Emilia, pushed her into her room and shut the door. Meyer repeated the story, and to his recollection he used the word struck, slapped or hit. In response, appellant admitted what Emilia and Linda said was essentially correct. Meyer testified that at no time during the conversation did appellant ever tell him that she merely touched the girl. Meyer further testified that later the same day, he summoned appellant to his office where she again admitted slapping Emilia. He then handed her a supervisor's report of the incident which he had drafted. Appellant admitted the report was accurate but refused to sign it because

she said, "this was all happening too fast." He then asked appellant to resign.

Linda testified that appellant admitted hitting Emilia, but that it wasn't hard and she would not consider it a hit "or something like that."

Duter testified that he first learned of the incident on January 6th from Griffin although he had been at the school on January 2d. He then talked to Meyer, who told him of the two interviews he had with appellant and that on neither occasion had she denied striking the girl. Duter then sent a letter to appellant informing her that she was discharged. Approximately two weeks later, Duter received a phone call from appellant, explaining what had happened. She denied she had struck Emilia, stating that she simply put her hand on Emilia's cheek. She asked that Duter check with Hartley and Meyer about the incident. He did this and was told the same thing as before; that appellant did not deny striking the girl and they were unable to find any justification for her conduct. Duter further testified that the basis for appellant's discharge was the alleged slapping incident, and that touching a girl is encouraged at the school and would not be sufficient cause for discharge. However, striking a girl would never be acceptable.

Appellant testified that on the afternoon of January 2d, she overheard some girls talking about the incident with Emilia and Linda. She followed Emilia to her room and asked her what was wrong. Emilia replied, "You slapped me." Appellant denied slapping her and stated she was sorry if Emilia felt that she had slapped her. Appellant testified that at no time did she apologize to Emilia for slapping her. The next morning, at the community meeting, there was discussion over the fact that one of the inmates had, on the previous day, been sent to Taycheedah for striking another inmate. The girls were upset over this event. During this discussion,

one of the inmates asked, "What about [appellant] striking or hitting Emilia?" The subject was immediately dropped. In the conference with Meyer and Hartley that followed, appellant testified she corrected discrepancies in the explanations of the incident given by Emilia and Linda. She further testified that she never admitted slapping Emilia; she was never asked to explain her side of the story; and she told Meyer she had simply "touched" Emilia on the cheek. That afternoon, appellant appeared in Meyer's office. Meyer stated he had decided to let her resign; otherwise she would be fired. She was asked to sign a document but declined from doing so. She testified that she did not admit the truth of the facts contained in this report, which allegedly was not the same document as the supervisor's report introduced in evidence. Meyer gave her until the following Monday to sign the report. Appellant discussed the matter with Duter for the first time on the telephone, approximately two weeks later.

### Issues.

We consider the following issues to be dispositive of this appeal:

(1) Did the board err in placing the burden of proof on appellant?

(2) Did the board err in applying an improper standard in evaluating the evidence?

(3) Are the findings of the board supported by substantial evidence?

Secs. 16.24, 227.08, 227.10 (1), and 227.13, Stats.,[1] prescribe the basis for discharge of a civil service em-

---

[1] "16.24 Removals, suspensions, discharges, reductions, dismissals, layoffs, resignations. (1) (a) No permanent subordinate or employe in the classified service who has been appointed under ss. 16.01 to 16.32 or the rules made pursuant thereto shall be removed, suspended without pay, discharged, or reduced in pay or position except for just cause, which shall not be religious or

ployee and procedure for administrative adjudications in respect thereto.

*Burden of proof.*

During the hearing, the chairman of the board stated that the burden of proof is always on the appellant; that the state has the burden of going forward, but that the state does not have the burden of proof. Appel-

political. No suspension without pay shall be effective for more than 30 days. In all such cases the appointing officer shall, at the time of such action, furnish to the subordinate in writing his reasons for the same. The reasons for such action shall be filed in writing with the director within 5 days of the effective date thereof. Within 10 days after the effective date of such action of the appointing officer, the employe may appeal to the board and within 30 days after the date of appeal, the board shall hold a public hearing thereon.

"(b) After the public hearing before the board, the board shall either sustain the action of the appointing officer, or shall reinstate the employe fully. Any action brought against the appointing officer by the employe for failure to comply with the order of the board to reinstate shall be brought and served within 60 days from the date of the board's findings."

"227.08 **Rules pertaining to procedure.** Each agency shall adopt rules governing the form, content, and filing of pleadings, the form, content and service of notices, the conduct of prehearing conferences, and other necessary rules of procedure and practice."

"227.10 **Evidence and official notice.** In contested cases:

"(1) Agencies shall not be bound by common law or statutory rules of evidence. They shall admit all testimony having reasonable probative value, but shall exclude immaterial, irrelevant or unduly repetitious testimony. They shall give effect to the rules of privilege recognized by law. Basic principles of relevancy, materiality and probative force, as recognized in equitable proceedings, shall govern the proof of all questions of fact."

"227.13 **Decisions.** Every decision of an agency following a hearing shall be in writing accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each material issue of fact without recital of evidence."

lant contends that this was error, the effect of which was to place the burden on appellant of negating the existence of evidence which would sustain the discharge.

In order to determine the question of who must bear the burden of proof in a hearing before the State Board of Personnel, it is necessary to restate the function of the board as an administrative agency under sec. 16.24 and ch. 227, Stats.

In *Odau v. Personnel Board* (1947), 250 Wis. 600, 27 N. W. 2d 726, it was stated that:

". . . it is the action of the appointing officer that determines the employee's position, and not the action of the Personnel Board or its director. These latter officers have the duty of classification and the power of review. For the protection of employees against unjust treatment by appointing officers, provision is made in sec. 16.24 (1) (a) for appeal by the employee to the Personnel Board within ten days after the effective date of the action of such officer."

There is no requirement for a hearing prior to a discharge; speedy appeal by the employee to the board is provided to insure against the appointing authority acting arbitrarily, capriciously, or without just cause. Absent an appeal by the employee the discharge would stand. Otherwise the power of dismissal would be taken from the employer and vested in the Board of Personnel, a result not contemplated by the statutory procedure. However, after the employee has appealed to the board, the appointing officer must present evidence to sustain the discharge and has the burden of proving that the discharge was for just cause.[2]

---

[2] Appellant places considerable reliance on *Ricucci v. United States* (Ct. Cl. 1970), 425 Fed. 2d 1252. However, that case was an action under 5 USCA, section 7512, which, the court held required opportunity for hearing *prior* to the discharge of a "preference eligible employee" of the Federal Civil Service. A concurring opinion relied upon common-law principles of evidence in declar-

The phrase "burden of proof" is used in the sense of burden of persuasion rather than who has the burden of going forward with the evidence. The burden of going forward with the evidence is a procedural device for the orderly presentation of a case, and shifts to the other party when a prima facie case has been established. The trial court was correct in stating that the allocation of this burden is of no significance as long as a fair hearing is conducted. The burden of persuasion, however, *never* shifts—it remains on the same party throughout the whole case. As this court said in *Murphy v. Estate of Skinner* (1915), 160 Wis. 554, 564, 152 N. W. 172:

". . . It is not accurate to say that the burden of proof has been shifted because a *prima facie* case has been made. Where the plaintiff has the burden of proof at the beginning of a trial it remains with him to the end."

We conclude that in a discharge proceeding before the Personnel Board the appointing authority has the burden of proving that the discharge was for just cause. Thus, it was error in the instant case for the board to place the burden of proof on the appellant.

*Standard in evaluation of evidence.*

The board found that appellant slapped Emilia; that such an act was in violation of a rule of the institution with which appellant was familiar, and therefore the discharge of the appellant was for just cause. In so doing, however, the board looked upon its role as merely to find substantial evidence to support the action of the

ing that "[t]he defendant [employer] has the burden of proof on the whole case to show that plaintiff should be discharged for the good of the service." *Id.* page 1257. In the instant case, the discharge is effected solely by the action of the employer.

employer. The following statements were taken from the memorandum decision of the board:

"There seems to be no question that if the appellant did in fact slap the inmate that such would be just cause for her discipline.

"The sole question before the board is as to whether or not appellant did so slap an inmate.

"In answering this question the board must not be swayed by the fact that the girls who are confined at Oregon may at times be very difficult and the provocation they extend to the counselors may be extreme. The board must not lose sight of the fact that it may not substitute its judgment for that of the administrator.

"The board must likewise recall that the act of the appellant that is the basis for the discipline need not be proved to happen beyond a reasonable doubt or even by the preponderance of the evidence. That the act alleged to have happened need find only adequate support from the evidence."

". . .

"However, appellant has not been on trial here. If anyone has been on trial here, it is Rex Duter, the superintendent. He is charged with having acted arbitrarily and capriciously and without just cause in terminating the appellant. We must look at him rather than the appellant.

"Is there adequate support in the record as would reasonably justify the discipline of the appellant? Is there substantial evidence that appellant slapped Emilia . . . as specified? Is it, without being convincing that it is more probable that she did than that she didn't?

". . .

"There is substantial evidence that appellant did slap Emilia. In fact, it could easily be viewed as proof just short of that beyond a reasonable doubt."

The substantial evidence test is applicable only on judicial review; and, therefore, the board misinterpreted its function, when it found that there was substantial evidence to support the action of the appointing authority.

This court stated in *Robertson Transportation Co. v. Public Service Comm.* (1968), 39 Wis. 2d 653, 658, 159 N. W. 2d 636:

". . . The basic case is *Gateway City Transfer Co. v. Public Service Comm.* (1948), 253 Wis. 397, 34 N. W. 2d 238. That case pointed out that in reviewing administrative decisions, 'substantial evidence' did not include the idea of this court weighing the evidence to determine if a burden of proof was met or whether a view was supported by the preponderance of the evidence. Such tests are not applicable to administrative findings and decisions. We equated substantial evidence with that quantity and quality of evidence which a reasonable man could accept as adequate to support a conclusion. And, in this process, sec. 227.20 (1) (d), Stats., providing that the decision of an agency may be reversed if unsupported by substantial evidence in view of the entire record as submitted does not permit this court to pass on credibility or to reverse an administrative decision because it is against the great weight and clear preponderance of the evidence, if there is substantial evidence to sustain it.

"Substantial evidence is not equated with preponderance of the evidence. There may be cases where two conflicting views may each be sustained by substantial evidence. In such a case, it is for the agency to determine which view of the evidence it wishes to accept. Likewise, there are cases where only one view can be supported by substantial evidence and the determination depends upon the credibility of witnesses."

In *Bell v. Personnel Board* (1951), 259 Wis. 602, 607, 49 N. W. 2d 889, the court held defective, findings of the Personnel Board couched in terms of the employer having "reason to believe" the truth of the facts upon which the discharge was based:

"We are of the opinion that findings 8, 9, 10, and 11 are defective and not the type of findings required under the provisions of sec. 227.13, Stats. In determining whether Bell was discharged for just cause it is not suffi-

cient for the board to find that Marcus believed Bell was guilty of certain conduct, which, if true, would constitute just cause for the discharge; but rather, whether Bell actually did these things which the board has found that Marcus believed Bell did."

Although this court did not approve the findings in *Bell v. Personnel Board, supra,* from an independent examination of the record it was determined that there was substantial evidence in view of the entire record as submitted to sustain the discharge.

We find no language in *Bell* or any other authority or statute which would indicate the Personnel Board should apply the substantial evidence test in discharge proceedings. As we view the statutes and case law of this state, the substantial evidence rule is limited to judicial review of administrative determinations unless expressly otherwise provided by statute. It, therefore, becomes necessary to determine the proper evidentiary standard for the board to apply in determining whether the evidence justifies a dismissal. We do not find the standard set forth in either the statutes or case law of this state.

Appellant concedes it should not be the beyond a reasonable doubt standard used in criminal cases. The respondent submits it is the substantial evidence standard which we have hereinbefore determined is not applicable to discharge proceedings before the Personnel Board. Appellant urges that the standard be that of "a reasonable certainty by the greater weight of the credible evidence, when that evidence is clear, satisfactory and convincing," and reference is made to the standard of proof required for persons "charged with a traffic offense or other civil forfeiture." We believe the last quoted portion of the preceding sentence to be an inaccurate statement of the law as it now exists in this state.

The burden of proof suggested by appellant applies only to those forfeiture actions for violation of municipal ordinances, where the violation involves an ordinance which has a statutory counterpart.[3] If there is no statutory counterpart, the required burden of proof is that of other civil cases, that the facts be established to a reasonable certainty by the greater weight or clear preponderance of the evidence.[4] Furthermore, we do not equate the adoption of institutional rules with the enactment of municipal ordinances.

Also our attention has been directed to the charter of the city of Milwaukee as enacted by the state legislature. Particular reference is made to sec. 29.16 of the charter relating to decisions of the board of fire and police commissioners concerning discipline matters of the members of the respective departments. Sec. 29.16 provides:

"Within three days after hearing the matter the board shall, by a majority vote of its members, *determine whether by a preponderance of the evidence the charges are sustained. . . .*" (Emphasis added.)

While the Milwaukee Charter is not authority, it is persuasive in bringing us to conclude that the standard to be used by the Personnel Board in making its findings should be that used in ordinary civil actions, to a reasonable certainty, by the greater weight of the credible evidence [5] standard.

The Personnel Board is required by law to find ultimate facts, and there is no authority for the board to determine if there is substantial evidence to support the action of the appointing authority. The function of the board is to make findings of fact which it believes are

[3] *Madison v. Geier* (1965), 27 Wis. 2d 687, 135 N. W. 2d 761.
[4] *Cudahy v. DeLuca* (1970), 49 Wis. 2d 90, 181 N. W. 2d 374.
[5] *See* Wis J I—Civil, Part I, 200.

proven to a reasonable certainty, by the greater weight of the credible evidence.

### Substantial evidence.

Sec. 16.24 (1) (b), Stats., restricts the action of the board to (1) sustaining the action of the appointing officer, or (2) ordering full reinstatement of the employee. It is not clear as to why the legislature chose to so restrict the authority of the board. Nevertheless, while the legislative restrictions placed upon the authority of the Personnel Board are limited and restricted, we are of the opinion that they are not applicable to this court on review.

Three members of the board concurred in the decision it ultimately reached in this case; a fourth did not concur and was of the opinion "that there was not substantial or satisfactory evidence that the appellant did what she was accused of doing;" and the fifth member did not participate.

Respondent asserts the Oregon School for Girls has a rule which in essence provides:

"Under no circumstances shall physical force or threat of physical force be used with any child except in self-defense, the protection of persons or property, or the prevention of escape."

It is further asserted that conformity with this rule is essential to carrying out the rehabilitation process conducted at the institution. In *Kenosha Teachers Union v. Wisconsin Employment Relations Comm.* (1968), 39 Wis. 2d 196, 204, 205, 158 N. W. 2d 914, this court stated:

" ' "[T]he term 'substantial evidence' should be construed to confer finality upon an administrative decision on the facts when, upon an examination of the entire record, the evidence, including the inferences therefrom,

is found to be such that a reasonable man, acting reasonably, *might* have reached the decision; but, on the other hand, if a reasonable man, acting reasonably, *could not* have reached the decision from the evidence and its inferences then the decision is not supported by substantial evidence and it should be set aside." '

" . . .

" 'We deem that the test of reasonableness is implicit in the statutory words "substantial evidence." However, in applying this test the crucial question is whether a reviewing court is only to consider the evidence which tends to support the agency's findings, or whether it is also to consider the evidence which controverts, explains, or impeaches the former. Use of the statutory words "in view of the entire record as submitted" strongly suggests that the test of reasonableness is to be applied to the evidence as a whole, not merely to that part which tends to support the agency's findings.' "

It is well established that the credibility of the witnesses and the weight of the evidence is a matter that lies exclusively within the province of the board. *Stacy v. Ashland County Department of Public Welfare* (1968), 39 Wis. 2d 595, 159 N. W. 2d 630; *Robertson Transport Co. v. Public Service Comm., supra.* However, in *Robertson* at page 659, this court stated that "[w]hat is substantial or what a reasonable man might consider to be adequate support of a conclusion lies within the domain of the reviewing court and this court may well differ on this point with an administrative agency."

There are two issues presented in the instant appeal which must withstand the test of substantial evidence: Whether appellant is chargeable with the conduct complained of; and, whether such conduct, if true, constitutes just cause for discharge.

Judged by the foregoing criteria, it is our opinion that there is not substantial evidence to establish that appellant slapped Emilia in such a degree so as to constitute the use of unprovoked and unnecessary "physical

force" in violation of a rule promulgated by the institution. A review of the evidence reveals that both Emilia and Linda testified it was a slap; Emilia further testified that after she went to her room she observed red marks on the side of her face, although apparently there was no opportunity for anyone else to observe these marks. Joyce testified that appellant had "tapped" Emilia, but that she would not consider it a slap. Appellant testified that at the conference with Hartley and Meyer she admitted touching Emilia but denied that she slapped her. This denial is corroborated by Emilia and Linda. Hartley could not recall whether appellant admitted slapping Emilia at this meeting but after the meeting related that appellant specifically stated she had touched her and had not slapped her. The only unequivocal admission by appellant that she had slapped Emilia was testified to by Meyer. This allegedly occurred in his office when he asked appellant to resign. As to the degree in which she was slapped, Emilia testified that appellant did not wind up and hit her; that she did not cry out; and that it did not hurt, although she felt a little sting. Duter testified that touching the inmates is encouraged of the counselors, but that an assault or a striking was totally unacceptable. The discharge of appellant was based solely on the alleged "assault." No independent attempt was made by Duter to ascertain the degree of force that was used. However, this is the issue upon which a determination of just cause must depend. The distinction between touching, slapping and assault is one of degree. Physical force may or may not be an element of a slapping, depending on the circumstances. It is apparent that the board relied primarily on an alleged admission of the appellant to Meyer that she had slapped Emilia. Joyce, acknowledged by the board as a good witness, testified that appellant and Emilia

were only about six inches apart when the incident took place. Appellant then reached out and put her hand on Emilia's face. She did not consider it a slap. This testimony, taken together with the testimony of Emilia, is the only real probative evidence as to the degree of force involved. The only reasonable conclusion to be drawn is that the "slap" did not involve a requisite degree of physical force necessary to sustain a finding of just cause warranting dismissal.

We, therefore, conclude that the judgment must be reversed and the cause remanded to the Personnel Board with directions to order reinstatement of the appellant.

*By the Court.*—Judgment reversed, and cause remanded with instructions.