BERKAN, Appellant, v. PERSONNEL BOARD, Respondent.

*No. 282. Submitted under sec. (Rule) 251.54 November 28, 1973.—Decided January 4, 1974.*
(Also reported in 213 N. W. 2d 354.)

For the appellant there was a brief and oral argument by *William A. Berkan* of Madison, pro se.

For the respondent the cause was argued by *Robert J. Vergeront,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J.    In determining whether the evidence justified the dismissal, it was the function of the state personnel board "to make findings of fact which it believes are proven to a reasonable certainty, by the greater weight of the credible evidence." [1]

Following remand by the circuit court,[2] the respondent board made the following findings of fact:

(1) That appellant exhibited "an unwillingness to cooperate with the Adams County Welfare Board and on occasions belittled the members of such board and made disparaging remarks concerning their competence."

(2) That appellant exhibited "a lack of rapport" and "refused to cooperate" with both the county board and the county welfare board.

(3) That appellant "failed to cooperate with or permit the Adams County Welfare Board to participate in its statutory responsibilities . . . ."

(4) That appellant "failed to advise and communicate with the County Welfare Board on matters of administration of the Department . . . ."

---

[1] *Reinke v. Personnel Board* (1971), 53 Wis. 2d 123, 137, 138, 191 N. W. 2d 833.

[2] Holding burden of proof to be on the discharging agency, not upon the employee, as required by *Reinke v. Personnel Board, supra,* at page 133.

(5) That appellant "exercised a belligerent, uncooperative attitude and refused to accept any direction from such Board in the operation of the County Department . . . ."

In reviewing the respondent board's findings and determination, the circuit court applied the "substantial evidence" test. This was the proper scope of review, with the reviewing court to " '. . . confer finality upon an administrative decision on the facts when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable man, acting reasonably, *might* have reached the decision; . . .' " [3] The circuit court upheld the findings of fact of respondent board, stating:

"The evidentiary findings make it clear that plaintiff's conduct was consistent, was intentional and persistent, and was defiant. One can only conclude from these findings a calculated course of action intended to prevent the County Welfare Board from exercising its function and thus obstructing the orderly course of administration of the county department in the manner intended by the legislature under Sec. 46.22 (2). . . ."

On appeal of the circuit court's affirmance to this court, the test remains that of whether substantial evidence supports the board's findings.[4] Where there is, as there is here, dispute in the testimony as to what was said or done, judicial review does not include judicial intervention in resolving such dispute. Credibility of witnesses and the weight of the evidence is a matter that lies exclusively within the province of respondent board.[5]

---

[3] *Id.* at pages 138, 139, quoting *Kenosha Teachers Union v. Wisconsin Employment Relations Comm.* (1968), 39 Wis. 2d 196, 204, 158 N. W. 2d 914.

[4] *Id.* at page 139.

[5] *Id.* at page 139, citing: *Stacy v. Ashland County Department of Public Welfare* (1968), 39 Wis. 2d 595, 159 N. W. 2d 630; *Robertson Transportation Co. v. Public Service Comm.* (1968), 39 Wis. 2d 653, 159 N. W. 2d 636.

However, beyond such conflicts in testimony, it does appear that the board's findings that appellant was uncooperative rest heavily upon two incidents: (1) The occasion in the city clerk's office where the appellant said of the county board, "Well those G-- D--- S-- of B------, will they never listen to me;" and (2) the county board meeting where one welfare board member testified that appellant said, "you [the board] may set policy on GR or general relief and I'll set the policy on the rest of all the programs in this department," and the board secretary testified that appellant said that the board could only make policy on general relief but had no power to control appellant's work on other programs, such as categorical aids. The respondent board accepted this testimony, and found that appellant's statement "certainly meant that . . . he did not propose to discuss the matters with the board or permit it to have anything to say about them."

Appellant's statement that only general relief came under the supervision and policy-making authority of the county welfare board is in error.[6] However, the question remains whether the two incidents, very nearly alone, can support a finding of an attitude of lack of cooperation throughout appellant's fourteen months of service. If they are viewed as isolated and unrelated incidents, they provide a basis, narrow as to time, for a broader conclusion. If they are susceptible of a reasonable inference that they are demonstrative of a continuing attitude and

[6] *See:* Sec. 46.22, Stats., County public welfare department, providing in pertinent part: "(2) BOARD. The county board of public welfare shall . . .

". . .

"(c) Supervise the working of the county department of public welfare and shall be a policy-making body determining the broad outlines and principles governing the administration of the functions, duties, and powers assigned to said department under s. 46.22 (4) and (5)."

course of conduct, they clearly provide substantial support for the board's findings of fact. We cannot hold that a reasonable man, acting reasonably, *could not* have reached the decision that they do from the evidence and its inferences.[7] So ruling, we concur in the circuit court holding that findings of fact of the respondent board were supported by substantial evidence on this record.

The respondent board found that the acts constituted the "gross misconduct" which the state administrative code provides shall be grounds for dismissal.[8] The phrase "gross misconduct" is in the Merit System Rule for County Agencies Administering Social Security Aids, adopted by the state department of health and social services, in implementing sec. 49.50 (2), Stats.[9] In defining the term, the circuit court stated, "The word gross as an adjective implies largeness exceeding the ordinary." We agree that the reference is to degree of misconduct, not to some separate kind or category of mis-

---

[7] *Reinke v. Personnel Board, supra,* at page 139, quoting *Kenosha Teachers Union v. Wisconsin Employment Relations Comm., supra,* at page 205.

[8] PW–PA 10.12, Wis. Adm. Code (Register, December, 1968, No. 156), provides in pertinent part: "(2) DISMISSALS. The appointing authority . . . may dismiss any employee who is negligent or inefficient in his duties, or unfit to perform his duties; *who is found to be guilty of gross misconduct;* or who is convicted of a felony. . . ." (Emphasis supplied.)

[9] Sec. 49.50 "(2) RULES AND REGULATIONS, MERIT SYSTEM. The department shall adopt rules and regulations, not in conflict with law, for the efficient administration of aid to the blind, old-age assistance, aid to families with dependent children and aid to totally and permanently disabled persons, in agreement with the requirement for federal aid, including the establishment and maintenance of personnel standards on a merit basis. The provisions of this section relating to personnel standards on a merit basis supersede any inconsistent provisions of any law relating to county personnel; but this subsection shall not be construed to invalidate the provisions of s. 46.22 (6)." (Sec. 46.22 (6) relates to merit system status, and is not here involved or applicable.)

conduct. The circuit court then stated it could not conceive of a higher degree of misconduct ". . . than the definition of 'misconduct' used in *Boynton Cab Co. v. Neubeck* . . . which includes the element of intent." [10] It accepted that definition to define "gross misconduct" as ". . . an intentional disregard of the interests of the employing board and in disregard of the standard of behavior that board is entitled to expect." We find no basis or reason for appellant's quarreling with such definition and, in fact, appellant accepts it as a reasonable definition. [11]

On the earlier review in this case, the circuit judge then conducting the review held the phrase "gross misconduct" to require "a more stringent standard" than "just cause," [12] statutorily prescribed as the basis for

[10] *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259, 260, 296 N. W. 636, stating: ". . . The application of these principles leads to the conclusion, in view of the matters to be taken into consideration, as stated above, that the intended meaning of the term 'misconduct' as used in sec. 108.04 (4) (a), Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

[11] Appellant's brief states: "*Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259, 260, sets forth a reasonable definition of gross misconduct."

[12] 15 Am. Jur. 2d, *Civil Service*, p. 497, sec. 36, defining "just cause" to be: ". . . cause sufficient in law, or any cause which is detrimental to the public service. Legal cause for disciplinary action exists if the facts found by the commission disclose that the

dismissal of state employees.[13] On the first review in this case, the circuit judge found such stringent standard in analogizing the purpose of sec. 108.04 (5), Stats., dealing with discharged employees' eligibility for unemployment benefits.[14] Accepting this standard equates the "misconduct" precipitating discharge which will result in forfeiture of subsequent unemployment compensation benefits with the "gross misconduct" required for dismissal of an employee administering categorical aids under the social security system. Since the purpose of the Unemployment Compensation Act is to provide compensation to all but the most undeserving discharged employees, we find the analogy between the two situations to be apt. Interpretation of either a statute or an administrative code provision is affected by the purpose of the statute or code provision.[15] Where purposes are alike, a basis for similarity of construction has been made. If it were material here, we would hold that the test for determining what is "gross misconduct" under PW–PA 10.12, Wisconsin Administrative Code, is the same as for determining "misconduct" under sec. 108.04 (5), Stats., to wit: ". . . whether such behavior reflects an 'intentional and substantial disregard of the employer's

employee's conduct impairs the efficiency of the public service, but there must be a real and substantial relation between the employee's conduct and the efficient operation of the public service; otherwise, legal cause is not present."

[13] Sec. 16.28, Stats.

[14] Sec. 108.04 (5), Stats., providing: "DISCHARGE FOR MISCONDUCT. An employe's eligibility, for benefits based on those credit weeks then accrued with respect to an employing unit, shall be barred for any week of unemployment completed after he has been discharged by the employing unit for misconduct connected with his employment; . . ."

[15] *Milwaukee Transformer Co. v. Industrial Comm.* (1964), 22 Wis. 2d 502, 126 N. W. 2d 6.

interests or the employee's duties.' " [16] But, particularly with a higher test prescribed on the second court review here challenged, it is sufficient to hold, as we do, that the trial court was warranted, upon affirming the findings of fact of appellant board, to affirm also the board's conclusion that the defendant's conduct constituted gross misconduct and was a proper ground and sufficient basis for his dismissal.

*By the Court.*—Judgment and order affirmed.

[16] *Id.* at pages 511, 512, holding: "The general standard for determining whether an employee's course of conduct is misconduct is whether such behavior reflects an 'intentional and substantial disregard of the employer's interests or the employee's duties.'
" . . .
"When determining whether a worker's conduct is 'misconduct' which will disqualify him from the benefits of the program, the employee's behavior must be considered as an intentional and unreasonable interference with the employer's interest." (Citing *Cheese v. Industrial Comm.* (1963), 21 Wis. 2d 8, 17, 123 N. W. 2d 553.)