GRAFF, Appellant, v. DENNY, City Treasurer, and another, Respondents.

*November 3—November 29, 1960.*

For the appellant there were briefs by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *Quincy H. Hale.*

For the respondents there was a brief and oral argument by *John K. Flanagan,* city attorney of La Crosse, and *William J. Sauer,* assistant city attorney.

MARTIN, C. J. As indicated by this court on the previous appeal and by the trial court in its memorandum decision herein, this is a consideration or review on the merits of the redetermination of the pension board.

The matter for determination by the pension board was whether the heart disease suffered by Graff was due to his occupation of fireman. Its conclusion was:

". . . that the applicant as a member of the department and while contributing to the pension fund within the hours when he was required to be on active duty and while engaged in the performance of duty contracted a disease due to his occupation and was found, upon examination by a licensed physician ordered by the board, to be permanently disabled physically by reason thereof so as to render necessary his retirement from service from such department . . ."

We find no authority for a city treasurer or *ex officio* officer of a pension board to determine the validity of an order of the board. The city's remedy is by certiorari. There the circuit court may review the board's findings. In *State ex rel. Ball v. McPhee* (1959), 6 Wis. (2d) 190, 215, 94 N. W. (2d) 711, this court held:

"A court in reviewing the action of an administrative board or agency in certiorari will go no further than to determine, (1) whether the board kept within its jurisdiction, (2) whether it acted according to law, (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment, and (4) whether the evidence was such that it might reasonably make the order or determination in question." (Syllabus 2.)

" ' "The case is certiorari. When certiorari is invoked to review the action of an administrative board, the findings of the board upon the facts before it are conclusive if in any reasonable view the evidence sustains them." ' *State ex rel. Hynek Co. v. Board* (1954), 267 Wis. 309, 315d, rehearing; *State ex rel. Morehouse v. Hunt* (1940), 235 Wis. 358, 367, 291 N. W. 745; *Wisconsin L. R. Board v. Fred Rueping L. Co.* (1938), 228 Wis. 473, 493, 279 N. W. 673."

In a judicial review of the pension board's determination the court is limited in matters of evidence to the question whether the finding is supported by substantial evidence in view of the entire record. *Gateway City Transfer Co. v. Public Service Comm.* (1948), 253 Wis. 397, 404, 34 N. W. (2d) 238.

The trial court's holding that the determination of the pension board is not conclusive upon the court requires qualification: It is not conclusive if the board's determination is not "supported by substantial evidence in view of the entire record." The trial court stated that it had examined with care all the testimony presented at the rehearing and was deciding "the merits of the case as presented at the rehearing."

Graff testified that, through the years he was employed by the city of La Crosse as a fireman, he was engaged in fire fighting on many occasions; that at the so-called "Swanson fire" in 1952 he became momentarily unconscious; that he had inhaled a lot of smoke at a fire on Caledonia street, a customary thing at fires; that his work often entailed fighting marsh or grass fires where masks are not worn and considerable smoke is inhaled by firemen; that he was very serious about fire fighting and it disturbed him emotionally.

Graff's superiors and a fellow fireman testified that the appellant's reaction to his job was different from that of the other firemen; that there was a nervous tension about him; that when a fire alarm came in he became very nervous and broke into a cold sweat; that on returning from a fire Graff was always wet with perspiration and at times he was the only one that was sweating; that a fireman's work is highly variable and irregular, going from routine duties under no pressure to excitable activities under tension.

Both Dr. Gilbert and Dr. Robert Ramlow, the latter making an examination of appellant ordered by the pension board,

testified that Graff suffered from a coronary occlusion, or myocardial infarction. Such a condition is the end result of the disease atherosclerosis, or a degeneration of the lining of the arteries, which develops over the years and is caused by or contributed to by many factors, including diabetes, high blood pressure, the nature of one's work, diet, emotional stress and strain, and heredity. Dr. Ramlow testified that the exact effect of these various theoretical factors is not conclusive and "no one knows the definite cause." He stated he could not testify to a reasonable medical certainty that Graff's disability was due to his occupation.

Dr. Gilbert testified he believed many of these theoretical factors contributed to the appellant's atherosclerosis; his work which called for sudden exertion for prolonged periods, extreme physical exertion combined with nervous tension; Graff's "extremely poor heredity;" his reaction to the excitement, as manifested by sweating and rapid heart action, being emotionally unstable; and the repetitious character of the anxiety and tension, alternating with his sedentary tasks —all were factors which contributed to the rapid progress of the disease and to the eventual occlusion which resulted in his disability. He testified:

"Q. Can you state to a reasonable degree of medical certainty that Chester Graff contracted a disease due to his occupation? A. Chester Graff, on the basis of his history and evidence produced in great detail by individuals who were working with him, certainly leads us to the conclusion that Mr. Graff had a form of atherosclerosis, that it progressed to seriously involve the blood vessels supplying the heart muscle and that the nature of his employment and his unusual emotional reaction to his employment contributed to the rapid progress of this condition and to the eventual occlusion of a significant heart blood vessel, which resulted ultimately in his disability."

He also testified:

"I think, considering all the evidence in this case, I would feel that the sequence of events necessarily happening to Mr. Graff, and his unusual emotional reaction to them during years of employment as a fire fighter, were probably the most important factor."

While the medical experts did not agree, a careful reading of the record shows that Dr. Ramlow's testimony was negative in character rather than contradictory of Dr. Gilbert's opinion. Dr. Ramlow testified he could not say that any type of activity or occupation causes this or that result with respect to atherosclerosis. Dr. Gilbert agreed that the causes of the disease are not completely known but are being extensively explored, and it was his opinion to a reasonable medical certainty that the factors detailed above, in the case of this appellant and this kind of occupation, contributed to his disability.

It was for the pension board to choose which medical testimony it would accept. It based its conclusions on the testimony given by Dr. Gilbert, which constituted "substantial evidence in view of the entire record." Under the rule referred to above, the trial court should have affirmed the board's decision.

*By the Court.*—Judgment reversed, and cause remanded with instructions to issue the writ applied for.

HALLOWS, J., dissents.