SPERBECK, Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Appellant.

*No. 19. Argued December 1, 1969.—Decided March 6, 1970.*
(Also reported in 174 N. W. 2d 546.)

284

For the appellant Department of Industry, Labor & Human Relations the cause was argued by *James P. Altman*, assistant attorney general, with whom on the briefs was *Robert W. Warren*, attorney general.

For the respondent there was a brief by *Lawton & Cates* and *Bruce F. Ehlke* and *John C. Carlson*, all of Madison, and oral argument by *Mr. Carlson*.

CONNOR T. HANSEN, J. Respondent's husband, John Sperbeck, was forty-six years old when he suffered a heart attack and died on February 11, 1967. At that time Sperbeck had been employed for sixteen years as a fireman by the city of Fond du Lac. On the day of his death, Sperbeck had not been working but had been spearfishing with his son and two friends. He returned home, and that evening suffered the fatal heart attack. An autopsy was performed which resulted in the following opinion by the medical examiner as to the cause of death:

"In my opinion, this 46 year old white male died of hemorrhage into an atheromatous plaque within the right coronary artery with occlusion. He also had rather severe arteriosclerotic cardiovascular disease which manifested itself by marked coronary sclerosis." [3]

---

[3] Atherosclerosis is a "degeneration of the lining of the arteries, which develops over the years and is caused by or contributed to by many factors, including diabetes, high blood pressure, the

The examiners for the ILHR Department were unable to reach an agreement on the claim and the matter was then taken before the ILHR Department which denied respondent's application and made the following findings of fact:

"That the deceased was employed by the respondent as a fireman, and was a participating employe under 66.90 to 66.918, Wisconsin Statutes; that he began such work for the respondent in 1950, at which time he received a physical examination; that he was a fire fighter until 1961 or 1962, when he became a driver; that one month before his death he was promoted to lieutenant; that the deceased died February 11, 1967, which was his day off; that he went spearfishing that day; that he died of coronary occlusion due to coronary sclerosis; that the deceased did not engage in any strenuous work in the two or three weeks prior to his death; that the autopsy disclosed the right coronary artery shows rather large atheromatous plaque with hemorrhage and complete occlusion to the artery, while the left coronary artery showed arteriosclerotic changes with large intimal cholesterol plaques which markedly narrowed the lumen; that the pathological findings are those of naturally progressive degenerative cardiovascular disease; that the cardiac findings were not caused or aggravated by his occupation; that the deceased did not sustain injury growing out of and incidental to his employment, nor did any injury arise out of his employment; that the presumption created by 891.45 was overcome."

It is conceded that Sperbeck met the three requirements of sec. 891.45, Stats., to bring the presumption into being. The principal issue in this case is whether the presumption provided in sec. 891.45 has been rebutted so that the ILHR Department could deny the application of respondent, Mrs. Sperbeck.

This court has held that there are two types of rebuttable presumptions:

---

nature of one's work, diet, emotional stress and strain, and heredity." *Graff v. Denny* (1960), 12 Wis. 2d 65, 70, 106 N. W. 2d 311.

"We are of the opinion that there are two types of rebuttable presumptions. One type is invoked by the law for reasons of public policy without regard to whether the presumption thus invoked is likely to bear any reasonable relationship to the actual fact presumed. A typical example of this type is the presumption that a deceased person exercised due care for his own safety. Such a presumption disappears from the case as soon as any evidence is introduced which tends to establish negligence on the part of the deceased. *Callahan v. Van Galder* (1958), 3 Wis. (2d) 654, 657, 89 N. W. (2d) 210; *McCarty v. Weber* (1953), 265 Wis. 70, 73, 60 N. W. (2d) 716.

"The other type of presumption is one in which the facts upon which it is based reasonably give rise to an inference of the ultimate conclusion embodied in the presumption. The presumption of undue influence, with which we are here concerned, is of this latter category. For reasons of policy the law has seen fit to clothe such an inference with the authority of a presumption in order to determine the result when no evidence to the contrary is introduced. However, there is no perceivable reason grounded on policy or logic why the inference should not continue after some evidence · has come into the case which tends to rebut the presumption. Basing a finding of fact on an inference is nothing more than grounding such a finding on circumstantial evidence. *Cf. Ryan v. Zweck-Wollenberg Co.* (1954), 266 Wis. 630, 647, 64 N. W. (2d) 226.

"Professor McCormick recognizes the two classes of presumptions heretofore discussed. McCormick, Evidence (hornbook series), p. 639, sec. 308. Furthermore, in speaking of a presumption grounded upon a reasonable inference, he states that '. . . the inference remains though the "presumption" has "disappeared." ' Id., at page 650, sec. 311." *Schlichting v. Schlichting* (1961), 15 Wis. 2d 147, 156, 157, 112 N. W. 2d 149.

The trial court determined that the presumption established by sec. 891.45, Stats., was a presumption "based upon probability," one in which the facts upon which it is based reasonably give rise to an inference of the ultimate conclusion embodied in the presumption. We agree with this determination.

It is apparent from the record that medical opinions differ as to the causal relationship between the occupation of a fireman and heart diseases. However, the question of whether to establish the presumption by statutory enactment was a decision for the legislature. The legislature had before it data based on the Metropolitan Life Insurance Company's actuarial statistics, and also the United States Department of Health, Education & Welfare publication, Vol. 53, No. 2, September, 1962, all of which showed the occupation of firemen as having a high incident of heart disease. Thus, the legislature had information from which it could reasonably conclude that a causal relationship exists between the occupation of a fireman and heart disease. The legislature, therefore, in enacting this statute created the type of presumption based on probability and carrying with it an inference which remains after the presumption is rebutted. *See Schlichting v. Schlichting, supra,* pages 156, 158.

In support of the appellant's position, certain medical testimony was presented to rebut the presumption, and Dr. Elston Belknap testified as the principal medical expert in behalf of the city of Fond du Lac. Dr. Belknap had examined the medical records of Sperbeck, and the essence of his testimony was that in his opinion the type of work Sperbeck did had no causative effect upon his condition.

"On cross-examination Dr. Belknap testified in substance as follows: There is considerable literature on the relationship of emotional stress to heart disease and there are great differences of opinion on this. Physicians agree that arteriosclerotic heart disease is a naturally progressive, degenerative disease but there is a wide difference of opinion as to cause. I know of no studies showing the effect of environment on the heart or arteriosclerotic disease, and the concensus of opinion is that environmental factors do not play a significant part. There are no studies excluding environment as a factor, however. Physicians speculate on a great many factors

which might have effect on arteriosclerosis, but, I believe, that I can say beyond all reasonable doubt that the deceased's occupation had no effect on his arteriosclerotic heart disease. This is in the face of material, the majority of which excludes environment as a causative factor."

We agree with the trial court's determination that this evidence was not sufficient to overcome the presumption created by sec. 891.45, Stats. Dr. Belknap's testimony, based on a premise rejected by the legislature rather than attempting to affirmatively establish the cause of death, does not rebut the presumption. Dr. Belknap represents that school of medical opinion which does not believe there is a causal connection between the occupation of a fireman and heart disease, and it is not for us to decide which school of medical opinion is correct.

"There is a provision in the Wisconsin statutes ('heart laws'), enacted in 1961, on the basis of which heart disease in firemen and policemen, after five years of service, is presumptively caused by employment. Such legislation is medically unsound." Belknap, Hellmuth, Johannse, Rodey, *Work and Heart Disease in Wisconsin*, 198 J. A. M. A. 9, 14 (Oct. 1966).

The legislature—faced with the decision of whether to enact sec. 891.45, Stats.,—decided to create the presumption and as already stated, it acted reasonably in doing so. Evidence which only attacks the rationale of the statute, without exposing the cause of death of a particular claimant, does nothing more than question the wisdom of the legislature. As the trial court stated, "If the Legislature has acted unwisely upon the basis of insufficient information, the remedy is to go back to the Legislature."

The appellant suggests that the decision of the circuit court establishes sec. 891.45, Stats., as a conclusive presumption. We do not so read the decision and this court does not so hold. The presumption created by sec. 891.45 is a rebuttable presumption; however, the evidence put

forth by appellant cannot be considered sufficient to rebut that presumption.

*Chapter 227 Review.*

The respondent petitioned the circuit court for review pursuant to the provisions of sec. 227.20, Stats. On appeal, the appellant takes the position that the review should be under sec. 102.23, relating to workmen's compensation claims. This issue was not raised before the circuit court and is now raised for the first time.

It is our conclusion that claims under sec. 66.191, Stats., are properly reviewable under sec. 227.20, and subject to ch. 227 review standards. *State ex rel. Beierle v. Civil Service Comm.* (1969), 41 Wis. 2d 213, 163 N. W. 2d 606; *Robertson Transportation Co. v. Public Service Comm.* (1968), 39 Wis. 2d 653, 159 N. W. 2d 636.

Sec. 66.191 (4), Stats.,[4] provides that payments from the retirement and benefit funds *"shall be administered"* by the industrial commission. (Emphasis added.) This legislative direction relates only to the administration procedures to be established for the handling of claims. It has no reference to the fact-finding process to be used in the determination of the rights of the respective parties. If the legislature had intended claims for benefits under sec. 66.191 (4) to be subject to both the procedural administrative standards of ch. 102 and the fact-finding and determinative standards for workmen's compensation, it would have been simple enough to so state in the statute. Claims for pension benefits under sec. 66.191 (4) are properly reviewed pursuant to sec. 227.20.

---

[4] "(4) This section shall be administered by the industrial commission, which may adopt necessary rules relating to hearings, investigations and other matters in connection with applications for benefits under this section."

*By the Court.*—The judgment of the circuit court is modified to provide that the record be remanded to the ILHR Department with directions to enter an award for the respondent for death benefits and, as modified, affirmed.