CITY OF SUPERIOR, and another, Plaintiffs-Appellants, V. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and others, Defendants-Respondents.

*No. 77–272. Argued June 5, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 637.)

For the appellants there was a brief by *Walter D. Thurow,* and *Wightman, Thurow & Sauthoff* of Madison, and oral argument by *Walter D. Thurow.*

A joint brief was filed by *Bronson C. La Follette,* attorney general, and *Donald P. Johns,* assistant attorney general, for Department of Industry, Labor & Human Relations; and *Bruce F. Ehlke,* and *Lawton & Cates* of Madison, for Max Luzaich (Deceased) and Pearl Luzaich, and oral argument by *Mr. Ehlke.*

DAY, J. This is an appeal from a judgment in a public employe death benefits claim under sec. 66.191, Stats. 1975.[1] Plaintiffs-Appellants, City of Superior (city) and Sentry Insurance Company (company) were ordered to pay a claim for the death of Max Luzaich (deceased), formerly a captain of the city of Superior Fire Department. The death benefits were to be paid to defendant-respondent, Pearl Luzaich (Mrs. Luzaich) and her son Michael.

There are three issues on this appeal:

[1] "66.191. **Special death and disability benefits for certain public employes subject to Wisconsin Retirement Act.** (1) Whenever a . . . fireman . . . while engaged in the performance of duty, be injured or contract a disease due to his occupation, and be found upon examination to be so disabled by a disability which is likely to be permanent, as to render necessary his retirement from any of the aforesaid services, the department of industry, labor and human relations shall order payment to him monthly, under s. 20.-865(1)(d) or 102.21, of a sum equal to one-half his monthly salary in such service at the time that he became so disabled. . . .

"(2) If such injury or disease shall cause the death of such person, and the person dies leaving surviving a spouse or an unmarried child under the age of 18 years, the department shall order monthly payments as follows:

"(a) To the surviving spouse . . .

"(b) To the guardian of each such child . . ."

1. Is there substantial evidence to support the Department of Industry Labor and Human Relations' (D.I.L.H.R.) finding that the aggravation of Mr. Luzaich's heart disease resulted in his death?

2. Did the D.I.L.H.R. hearing examiner err by admitting in evidence a medical report made at the time the deceased became a fire fighter?

3. Does the worker's compensation policy in this case provide coverage for death benefits under sec. 66.191, Stats. 1975?

Some of the facts found by D.I.L.H.R. are not specifically challenged by the company. These facts may be paraphrased as follows: On April 16, 1948 the deceased began working for the city as a fire fighter. Prior to starting his employment the deceased had a qualifying medical examination which showed no evidence of heart or respiratory disease. The deceased was a fire fighter for the city for seventeen years and was then promoted to captain in 1965.

The deceased's work required him to respond to approximately 275 to 325 fire alarms per year. During the course of fighting fires he was under stress and inhaled smoke. Even after being promoted to captain the deceased's work required him to continue to respond to alarms under stressful conditions and actively engage in fighting fires. On six occasions the deceased suffered from excessive smoke inhalation as a result of his work for the city.

During his employment the deceased was treated for elevated blood pressure. In the opinion of the deceased's treating physician, Dr. Lavine, the deceased's work for the city aggravated his high blood pressure. Dr. Lavine also opined that high blood pressure and emotional stress are pre-disposing factors to heart disease.

On October 22, 1973 the deceased was handling storm windows on a ladder. This work was not connected to

his employment for the city. While doing this work he suffered an acute myocardial infarction that caused his death.

D.I.L.H.R. also made other findings concerning the cause of Mr. Luzaich's death. These findings are specifically challenged by the company and will be discussed below.

On April 23, 1976 the three hearing examiners who heard the testimony in this case conferred, made the findings above and ordered the company to pay Mrs. Luzaich a lump sum and periodic payments in her own right and as guardian ad litem for her son, Michael. Following a petition for review, the D.I.L.H.R. commission made minor modifications in the findings and order on October 12, 1976. These modifications are not pertinent to this appeal.

*Substantial Evidence To Support D.I.L.H.R. Finding.*

The company challenges D.I.L.H.R.'s factual findings. Claims under sec. 66.191, Stats., are properly reviewable under ch. 227, the administrative procedure statute. *Sperbeck v. I.L.H.R. Dept.*, 46 Wis.2d 282, 290, 174 N.W.2d 546 (1970); *Reinke v. Personnel Board*, 53 Wis. 2d 123, 136, 191 N.W.2d 833 (1971).

Under sec. 227.20(6), Stats. 1975, an agency finding of fact will not be overturned unless the agency's finding ". . . is not supported by substantial evidence in the record." This standard does not allow a reviewing court to weigh the evidence or pass on the credibility of witnesses. Moreover, an agency determination reviewable under ch. 227 will not be overturned because it is against the great weight and clear preponderance of the evidence. *Voight v. Washington Island Ferry Line*, 79 Wis.2d 333, 342, 255 N.W.2d 545 (1977), citing *Gateway City Transfer Co. v. Public Service Comm.*, 253 Wis. 397, 405, 34 N.W.2d 238 (1948).

Before deciding whether the D.I.L.H.R. finding is supported by substantial evidence, it must first be determined what finding the company attacks and what D.I.L.H.R. actually found. The company states that, "There is absolutely no evidence indicating the employment aggravated a pre-existing disease so as to cause death on October 22, 1973." The company also claims that there ". . . is absolutely no evidence showing . . ." that ". . . the aggravation resulted in his [deceased's] death on April 22, 1973."

The pertinent portion of the D.I.L.H.R. findings are as follows:

". . . that the deceased's work for the respondent as a fire fighter and as a captain in respondent's fire department was sufficiently arduous and stressful enough to aggravate and accelerate beyond normal progress the arteriosclerotic heart disease from which the deceased suffered and which resulted in his death on October 22, 1973; that the deceased sustained an injury caused by an occupational disease arising out of employment by the respondent; that such injury, by aggravation and acceleration of the preexisting condition, caused the death of the deceased; . . ." (Emphasis added.)

The underlined portion, although somewhat confusing, might be interpreted to mean that the occupational aggravation of the heart condition caused death. But, the portion immediately before that clearly states that death resulted from arteriosclerotic heart disease and that the deceased's employment was an aggravating and accelerating factor. This latter finding is the only one that is necessary to support D.I.L.H.R.'s award in this case.

"If the work activity precipitates, aggravates and accelerates beyond normal progression, a progressively deteriorating or degenerative condition, it is an accident causing injury or disease and the employee should recover

even if there is no definite 'breakage.' *Shawley v. Industrial Comm., supra;* Currie, 37 Wis. Bar Bulletin F." *Lewellyn v. I.L.H.R. Dept.,* 38 Wis.2d 43, 59, 155 N.W.2d 678 (1968).[2]

The necessary D.I.L.H.R. finding in this case is that death was caused by heart disease and that the deceased's employment aggravated that disease. This finding is supported by the presumption of sec. 891.45, Stats., and by substantial evidence in the record. Sec. 891.45, Stats. 1975[3] provides that,

"**891.45. Presumption of employment connected disease.** In any proceeding involving the application by a municipal fire fighter or his or her beneficiary for disability or death benefits under s. 66.191 or any pension or retirement system applicable to fire fighters, where at the time of death or filing of application for disability benefits the deceased or disabled fire fighter had served a total of 5 years as a fire fighter and a qualifying medical examination given prior to the time of his or her joining the department showed no evidence of heart or respiratory impairment or disease, and where the disability or death is found to be caused by heart or respiratory impairment or disease, such finding shall be presumptive evidence that such impairment or disease was caused by such employment."

[2] The term "breakage" is used in a general sense to include such things as a rupture, hemorrhage or coronary thrombosis. *Lewellyn* at 38 Wis.2d 60.

Neither party raises this argument, but the underlined D.I.L.H.R. finding is superfluous for another reason. There were findings that death was caused by arteriosclerosis and coronary thrombosis and that the deceased's employment aggravated the arteriosclerosis. As will be discussed herein, these findings are adequately supported. These findings, even without the disputed finding, are adequate to support recovery. The company does not contend that work related arteriosclerosis must be the sole cause of death. This is not the rule with other occupational diseases. Silicosis, for instance, need only be shown to be a "material factor" in the development of a disabling pulmonary disease. *Milwaukee Malleable & Grey Iron Works v. Industrial Comm.,* 239 Wis. 610, 615, 616, 2 N.W.2d 197 (1942).

[3] As amended by ch. 83, L. 1977.

The presumption of sec. 891.45, Stats., was interpreted in *Sperbeck v. I.L.H.R. Dept., supra.*

"We are of the opinion that there are two types of rebuttable presumptions. One type is invoked by the law for reasons of public policy without regard to whether the presumption thus invoked is likely to bear any reasonable relationship to the actual fact presumed. A typical example of this type is the presumption that a deceased person exercised due care for his own safety. Such a presumption disappears from the case as soon as any evidence is introduced which tends to establish negligence on the part of the deceased. *Callahan v. Van Galder* (1958), 3 Wis.(2d) 654, 657, 89 N.W.(2d) 210 (1958); *McCarty v. Weber* (1953), 265 Wis. 70, 73, 60 N.W.(2d) 716.

"The other type of presumption is one in which the facts upon which it is based reasonably give rise to an inference of the ultimate conclusion embodied in the presumption. The presumption of undue influence, with which we are here concerned, is of this latter category. For reasons of policy the law has seen fit to clothe such an inference with the authority of a presumption in order to determine the result when no evidence to the contrary is introduced. However, there is no perceivable reason grounded on policy or logic why the inference should not continue after some evidence has come into the case which tends to rebut the presumption. Basing a finding of fact on an inference is nothing more than grounding such a finding on circumstantial evidence. *Cf. Ryan v. Zweek-Wollenberg Co.* (1954), 266 Wis. 630, 647, 64 N.W.(2d) 226.

"Professor McCormick recognizes the two classes of presumptions heretofore discussed. McCormick, Evidence (hornbook series), p. 639, sec. 308. Furthermore, in speaking of a presumption grounded upon a reasonable inference, he states that '. . . the inference remains though the "presumption" has "disappeared." ' Id., at page 650, sec. 311, *Schlichting v. Schlichting* (1961), 15 Wis.2d 147, 156, 157, 112 N.W.2d 149." *Sperbeck* at 46 Wis.2d 287.

In *Sperbeck* this court concluded that the presumption of sec. 891.45, Stats., was a presumption based on prob-

ability that may remain as an inference even though there has been some evidence tending to rebut it. In *Sperbeck* there was testimony rebutting the statutory presumption.

"On cross-examination Dr. Belknap testified in substance as follows: There is considerable literature on the relationship of emotional stress to heart disease and there are great differences of opinion on this. Physicians agree that arteriosclerotic heart disease is a naturally progressive, degenerative disease but there is a wide difference of opinion as to cause. I know of no studies showing the effect of environment on the heart or arteriosclerotic disease, and the consensus of opinion is that environmental factors do not play a significant part. There are no studies excluding environment as a factor, however. Physicians speculate on a great many factors which might have effect on arteriosclerosis, but, I believe, that I can say beyond all reasonable doubt that the deceased's occupation had no effect on his arteriosclerotic heart disease. This is in the face of material, the majority of which excludes environment as a causative factor." *Sperbeck* at 46 Wis.2d 288, 289.

This court determined that the above evidence was insufficient to overcome the presumption.

"Evidence which only attacks the rationale of the statute, without exposing the cause of death of a particular claimant, does nothing more than question the wisdom of the legislature. As the trial court stated, 'If the Legislature has acted unwisely upon the basis of the insufficient information, the remedy is to go back to the Legislature.' " *Sperbeck* at 46 Wis.2d 289.

In this case the deceased had severe coronary arteriosclerosis prior to October, 1973. Dr. Norbert Enzer, the company's expert, agreed with Dr. Stanley Irving, who performed the autopsy, that the cause of death was coronary thrombosis and arteriosclerotic heart disease. The exact etiology of arteriosclerosis is unknown. Dr. Enzer testified that the deceased had advanced arteriosclerosis

at death, but that in his opinion that condition was not caused, nor aggravated, nor accelerated by the deceased's job. In support of his opinion, Dr. Enzer noted the lack of any statistical evidence linking occupation and arteriosclerosis.

On cross-examination Dr. Enzer stated that there were various causes of arteriosclerosis. He also conceded that some medical doctors believed that there was a relationship between arteriosclerosis and fire fighting, but that he did not agree with that opinion. However, while Dr. Enzer did not believe it probable that the deceased's heart condition was affected by his work, he could not rule it out as a possible cause.

Dr. Max Lavine, the deceased's personal physician testified that the deceased suffered from high blood pressure which was aggravated by his work and that high blood pressure pre-disposed a person toward coronary artery disease. Dr. Lavine twice testified that the deceased's work aggravated and accelerated his previously existing heart condition.

The experts in this case agreed that death was caused by arteriosclerosis and coronary thrombosis. Dr. Lavine's testimony was further substantial evidence supporting D.I.L.H.R.'s findings that death was caused by arteriosclerosis aggravated and accelerated by the deceased's fire fighting duties.

Moreover, Dr. Enzer's testimony did not overcome the presumption of sec. 891.45, Stats., that a fireman's heart disease is caused by his employment.[4] Dr. Enzer disputed that fire fighting caused heart disease, but this was ". . . evidence which attacks the rationale of the

---

[4] The deceased was entitled to the statutory presumption because at the time of death he had been a fire fighter for over five years and because prior to the time he became a fire fighter he took a qualifying medical examination that failed to show any sign of heart disease. Sec. 891.45, Stats.

statute, without exposing the cause of death of a particular claimant [and] does nothing more than question the wisdom of the legislature." *Sperbeck* at 46 Wis.2d 289.[5]

### Admission Of Medical Report.

The company contends that D.I.L.H.R. erred by admitting Dr. Christianson's medical report into evidence. This report was made in 1948, prior to the time that the deceased became a fire fighter. The report stated that the deceased's heart and cardiovascular system was normal.

The company's claim of error is based on an interpretation of sec. 908.03 (6), Stats. 1975, part of the Wisconsin Rules of Evidence.[6] Sec. 908.03 (6), Stats., provides that the following records are not excluded by the hearsay rule, even though the declarant is available as a witness:

". . . (6) RECORDS OF REGULARLY CONDUCTED ACTIVITY. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances indicate lack of trustworthiness."

---

[5] The company also contends that the cause of the deceased's death was his physical exertion while hanging storm windows on the day in question. However, the company's own expert, Dr. Enzer testified that this activity was, ". . . like the straw that broke the camel's back. It was just enough to tip that heart over." The physical exertion may have been the immediate cause, but that does not exclude arteriosclerosis as an important factor in Mr. Luzaich's death.

[6] The rules of evidence do not necessarily apply to proceedings before administrative agencies. Sec. 227.08 (1), Stats. 1975. However, some evidentiary restrictions apply, including those concerning hearsay not subject to a recognized exception. *Outagamie County v. Brooklyn,* 18 Wis.2d 303, 312, 118 N.W.2d 301 (1962).

The Judicial Committee's Note provides that, ". . . Opinions and diagnoses are specifically admissible," 59 Wis. 2d at R. 270.

The company bases its argument on the same Judicial Committee comment, specifically language stating that "hospital records" are admissible. The company then goes on to note that Dr. Christianson's report is not a hospital record. This argument is unpersuasive. Dr. Christianson's report is admissible ". . . unless the source of information or other circumstances indicate lack of trustworthiness." Sec. 908.03 (6), Stats. There is no indication that the report is not trustworthy. The report, or diagnosis is certainly not any less trustworthy because it is the report of a single doctor rather than a a hospital record.

The company also relies on *Noland v. Mutual of Omaha Ins. Co.,* 57 Wis.2d 633, 205 N.W.2d 388 (1973) for the proposition that medical records or diagnoses are excluded by the hearsay rules if the

". . . entry requires explanation or a detailed statement of the judgmental factors upon which the diagnosis or opinion is based." *Noland* at 57 Wis.2d 633, 641, 642.

The company's argument favors admission of Dr. Christianson's report in this case. The report was a summary of a routine examination that was conducted before fire fighters started their employment for the city. There is no showing that the diagnosis was complex, or required explanation, or a statement of judgmental factors.

### *Does A Worker Compensation Policy Cover Benefits Under Sec. 66.191, Stats.?*

The company contends that while the city may be liable to Mrs. Luzaich for benefits under sec. 66.191, Stats. the company is not. The company argues that the stan-

dard worker's compensation policy does not cover claims under sec. 66.191, Stats. We disagree. This exact argument was considered and rejected by this court in *Manitowoc v. Iowa National Mut. Ins. Co.*, 68 Wis.2d 722, 229 N.W.2d 577 (1975).

In *Manitowoc* the widow of a fireman claimed benefits under sec. 66.191, Stats., and the insurance company contended that such benefits were not covered by the standard worker's compensation policy. This court rejected that argument because the policy coverage referred to ". . . any occupational disease law." *Manitowoc* at 68 Wis.2d 722, 724. The policy in this case contains the same language.

The company, in effect, is asking this court to overrule *Manitowoc*. The company's main argument supporting that result is that sec. 66.191, Stats., is a pension statute, and not a worker's compensation statute. This argument was raised in *Manitowoc* by the insurance company and by the Wisconsin Compensation Rating Bureau, the latter organization appearing as amicus curiae. We found the argument unpersuasive. *Manitowoc* at 68 Wis. 2d 725. Sec. 66.191, is not a pension statute and claims under that statute are covered by the standard worker's compensation policy.

*By the Court.*—Judgment affirmed.