Raymond OMERNICK, Victoria Omernick and John Omernick, Petitioners-Respondents-Petitioners,

v.

DEPARTMENT OF NATURAL RESOURCES, Appellant and Cross-Petitioner. [Case No. 77–557.]†

STATE of Wisconsin, Petitioner-Appellant and Cross-Petitioner,

v.

Raymond OMERNICK, Victoria Omernick and John Omernick, Respondents-Petitioners. [Case No. 77–558.]†

Supreme Court

*Nos. 77–557, 77–558. Argued November 24, 1980.— Decided February 2, 1981.*

(Also reported in 301 N.W.2d 437.)

† Motions for reconsideration denied, without costs, on April 6, 1981. BEILFUSS, C.J., took no part.

For the petitioners there was a brief and oral argument by *Jack Osswald* of Chicago, Illinois.

For the appellants the cause was argued by *Robert B. McConnell,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

WILLIAM G. CALLOW, J.   This review arises from an order issued by the Department of Natural Resources (DNR) directing Raymond Omernick, Victoria Omer-

nick, and John Omernick to remove certain obstructions from the beds of the Little Wolf River and Holt Creek, located on the Omernick property in the town of Franzen, Marathon county. The circuit court for Marathon county, the Honorable George A. Richards, reserve judge, presiding, reversed the DNR order and remanded to the DNR for further proceedings. The court of appeals reversed the circuit court and ordered the enforcement of the DNR order. *Omernick v. Department of Natural Resources,* 94 Wis.2d 309, 287 N.W.2d 841 (Ct. App. 1979). We granted the petition to review.

On May 26, 1976, the DNR issued a notice of investigation and hearing concerning six alleged violations by the petitioners of Chapters 30 and 31, Stats., to wit:

(1) That Raymond Omernick constructed and maintained an unauthorized dam upon and across the bed of Holt Creek on the Omernick property in violation of secs. 30.12,[1] 31.05,[2] 30.15,[3] and 31.25,[4] Stats. 1973;

---

[1] Sec. 30.12, Stats. 1973, provides:

"30.12 Structures and deposits in navigable waters prohibited; exceptions; penalty. (1) General prohibition. Unless a permit has been granted by the department pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:

"(a) To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or

"(b) To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line.

"(2) Permits to place structures or deposits in navigable waters. (a) The department may, upon application and after notice and hearing, grant to any riparian owner a permit to build or maintain for his own use a structure otherwise prohibited by statute, provided such structure does not materially obstruct navigation or reduce the effective flood flow capacity of a stream and is not detrimental to the public interest.

"(b) A riparian owner may place a layer of sand or other similar material on the bed of a lake adjacent to his property for

(2) That Raymond Omernick maintained and reconstructed an unauthorized fill-culvert roadway crossing upon the bed of Holt Creek in the northwest quarter of

the purpose of improving recreational use upon obtaining approval as stated in this paragraph. An application for approval to put sand or other similar material on the bed of a lake for such purpose shall be made to the department. Thereupon the department shall inspect such proposal and the location involved. The department may disapprove such application if it finds the proposed work will materially impair navigation or be detrimental to the public interest. The applicant shall be notified by mail as to the disposition of his application.

"(3) Penalty. Any person violating this section or any term or condition of a permit issued pursuant thereto shall be fined not more than $1,000 or imprisoned not more than 6 months or both."

[2] Sec. 31.05, Stats. 1973, provides:

"31.05 Applications for permits to construct. Any person, firm, corporation or municipality desiring a permit to construct, operate and maintain a dam shall file with the department a written application therefor, setting forth:

"(1) The name of the navigable waters in or across which a dam is proposed to be constructed and a specific description of the site for the proposed dam.

"(2) The purpose or purposes for which the proposed dam is to be constructed, operated and maintained.

"(3) In case the application is for a permit to construct, operate and maintain a dam for a private purpose, proof satisfactory to the department that the applicant owns or has an enforceable option to purchase the described dam site and at least 65% of the land to be flowed, or the flowage rights on at least 65% of such land. This subsection shall not apply to a person who has the power of eminent domain.

"(4) A general description of the proposed dam, of the material to be used in the construction thereof, and a general description of all booms, piers, and other protection works to be constructed in connection therewith.

"(5) The approximate amount of hydraulic power that the proposed dam is capable of developing.

"(6) The location of the nearest city or village and of the nearest existing dam above and below the site of the proposed dam.

"(7) A map on the scale of not less than 4 inches to the mile showing the lands that may be affected by the construction,

the northeast quarter of Section 34, Township 26 North, Range 10 East, town of Franzen, on the Omernick property in violation of the aforementioned statutes;

operation or maintenance of the proposed dam, or by any flowage that may be caused thereby and approximately the outline of such flowage, which map shall indicate the ownership of each tract of land within the flowage.

"(8) Such additional information of any nature that may be required by the department."

[3] Sec. 30.15, Stats. 1973, provides:

"30.15 Penalty for unlawful obstruction of navigable waters. (1) Obstructions penalized. Any person who does any of the following shall forfeit not more than $50 for each offense:

"(a) Unlawfully obstructs any navigable waters and thereby impairs the free navigation thereof.

"(b) Unlawfully places in navigable waters or in any tributary thereof any substance that may float into and obstruct any such waters or impede their free navigation.

"(c) Constructs or maintains in navigable waters, or aids in the construction or maintenance therein, of any boom not authorized by law.

"(d) Constructs or places any structure or deposits any material in navigable waters in violation of s. 30.12 or 30.13.

"(2) Exceptions. Subsection (1) does not apply to the floating or movement of logs or timber in navigable waters, or the necessary use of temporary booms in the course of such floating or movement or the cutting of weeds in such waters with the consent of the department.

"(3) Each day a separate violation. Each day during which an obstruction exists in violation of sub. (1) is a separate offense.

"(4) Obstructions are public nuisances. Every obstruction constructed or maintained in or over any navigable waters of this state in violation of this chapter and every violation of s. 30.12 or 30.13 is declared to be a public nuisance, and the construction thereof may be enjoined and the maintenance thereof may be abated by action at the suit of the state or any citizen thereof."

[4] Sec. 31.25, Stats. 1973, provides:

"31.25 Nuisances, abatement. Every dam, bridge or other obstruction constructed or maintained in or over any navigable waters of this state in violation of this chapter, and every dam not furnished with a slide, chute or other equipment prescribed by the department, is hereby declared to be a public nuisance, and the

(3) That Raymond Omernick had since 1964 maintained an unauthorized fill-culvert roadway crossing upon the bed of the Little Wolf River in the southeast quarter of the northeast quarter of Section 34, Township 26 North, Range 10 East, town of Franzen, on Omernick property in violation of the aforementioned statutes;

(4) That John Omernick[5] constructed an unauthorized fill-culvert roadway crossing upon the bed of the Little Wolf River in the southeast quarter of the southeast quarter of Section 34, Township 26 North, Range 10 East, town of Franzen, on Omernick property in violation of the aforementioned statutes;

(5) That Raymond Omernick without authorization deposited material upon the bed of Holt Creek in the southwest quarter of the southwest quarter of Section 27, Township 26 North, Range 10 East, town of Franzen, on Omernick property in violation of secs. 30.12 and 30.15, Stats. 1973; and

(6) That Raymond Omernick maintained and reconstructed a fill-culvert roadway crossing upon the bed of Holt Creek in the southwest quarter of the southwest quarter of Section 27, Township 26 North, Range 10 East, town of Franzen, on Omernick property in violation of secs. 30.12, 30.15, 31.23, and 31.25, Stats. 1973.

The notice further alleged that both Holt Creek and the Little Wolf River were navigable waterways and that no permits had been issued authorizing the dam, the four fill-culvert crossings, or the deposit. A hearing on these allegations was scheduled for June 23, 1976.

At the June 23 hearing before a DNR hearing examiner, the petitioners made no appearance, although

construction thereof may be enjoined and the maintenance thereof may be abated by action at the suit of the state or any citizen thereof."

[5] John Omernick died during the pendency of this matter.

Raymond Omernick had been subpoenaed to testify.[6] Accordingly, the only evidence taken at the hearing was in the form of testimony by three DNR employees and a number of exhibits, both photographic and documentary. Some of the testimony, as well as some of the exhibits, related to observations made by DNR employees who entered upon the Omernick property pursuant to a search warrant on August 7, 1975. The evidence adduced related to the navigability of the two waterways in question, the location and description of the alleged unlawful structures, their structural adequacy, and their impact upon the environment.

Following the hearing the hearing examiner issued findings of fact, conclusions of law, and an order finding that the structures and deposit had been constructed and maintained as alleged, that no permits had been issued for them, and that the two waterways involved were navigable in fact. The examiner concluded that the structures and the deposit were in violation of secs. 30.-12, 31.05, and 31.06,[7] Stats. 1973, and were nuisances

[6] On June 22, 1976, the Omernicks filed petitions with the United States District Court for the Western District of Wisconsin, seeking removal of the DNR's action to the federal court. The hearing examiner stated on the record that at 10:30 a.m. on the morning of the hearing he was presented with copies of the removal petitions by Raymond Omernick's son and another person. The examiner stated that he received a telephone call from the clerk of the Western District federal court informing him that the petitions for removal had been denied by Judge Doyle and that he was therefore free to proceed with the hearing.

[7] Sec. 31.06, Stats. 1973, provides:

"31.06 Hearing. (1) Upon receipt of an application for a permit the department may order a hearing or it may mail a notice that it will proceed on the application without public hearing unless a request for a public hearing is filed as hereinafter provided. The notice shall be mailed to the clerk of each municipality directly affected thereby and the department may give further or other notice as it deems proper. The department shall mail a copy of the

under secs. 30.15(4) and 31.25, Stats. 1973. The peti-
tioners were ordered to submit a plan to the DNR for
the removal of the structures and deposit and the re-
habilitation of the stream beds.

notice to the applicant who shall cause the same to be published
in each county in which affected riparian lands are located as a
class 1 notice, under ch. 985. If a hearing is not requested in
writing within 30 days after mailing of the notice, the department
may waive the hearing.

"(2)(a) If a hearing is ordered, the department shall, not less
than 10 days before such hearing, mail written notice thereof to
each person notified under sub. (1).

"(b) The department shall require the applicant to publish a
class 1 notice under ch. 985, of the hearing in each county in which
affected riparian lands are located, and may require the applicant
to mail such other notices as it deems necessary. Proof of publica-
tion and proof of mailing under this subsection and sub. (1) shall
be filed with the department.

"(3) At such hearing or any adjournment thereof the depart-
ment shall consider the application, and shall take evidence offered
by the applicant and other persons in support thereof or in opposi-
tion thereto, may require the amendment of the application, and
if it appears that the construction, operation or maintenance of
the proposed dam is in the public interest, considering ecological,
aesthetic, economic and recreational values, the department shall
so find and grant a permit to the applicant, provided the depart-
ment also finds that the applicant has complied with s. 31.14(2)
or (3) and, where applicable, with s. 31.05(3), based on the de-
partment's own estimate of the area of the flowage. The enjoy-
ment of natural scenic beauty and environmental quality are
declared to be public rights to be considered along with other public
rights and the economic need of electric power for the full develop-
ment of agricultural and industrial activity and other useful pur-
poses in the area to be served. In considering public rights to the
recreational use and natural scenic beauty of the river, the de-
partment shall investigate the potentialities of the lake and lake
shore created by the flowage and shall weigh the recreational use
and scenic beauty thereof against the known recreational use and
scenic beauty of the river in its natural state, and the department
shall further weigh the known recreational use and scenic beauty
of the particular section of river involved against the known

The Omernicks petitioned the DNR for a rehearing, raising an assortment of procedural and substantive de-

recreational use and scenic beauty of other sections of the same river and other rivers in the area remaining in their natural state (without regard to plans of other dams subsequently filed or to be filed); if it appears that the river in its natural state offers greater recreational facilities and scenic value for a larger number of people than can by proper control of the flowage level be obtained from the use of the lake and lake shore and that the remaining sections of the river and other rivers in the area in their natural state provide an insufficient amount of recreational facilities and scenic beauty, and if it further appears that the economic need of electric power is less than the value of the recreational and scenic beauty advantages of such river in its natural state, the department shall so find and the permit be denied. If the department finds that approval of the permit will cause environmental pollution, as defined in s. 144.30(9), the permit shall be denied.

"(4) Not more than 20 days after receiving notice as provided in sub. (1) each county clerk may and upon request of the chairman of the county board shall give written notice as provided in s. 59.04(2) of a special meeting of the county board to be held at a time and place set by the county clerk, not less than 2 weeks nor more than 3 weeks after mailing of such notice, for the purpose of making findings as hereinafter provided. He shall give notice of the time, place and purpose of such special meeting to the department and to the applicant, who shall cause the same to be published in the county, as a class 2 notice, under ch. 985, and the applicant shall cause a copy thereof to be mailed at least 7 days prior to such special meeting to every person interested in any lands that will be affected by the proposed dam and whose post-office address can by due diligence be ascertained. Proof of such publication and notice shall be filed with the county clerk. At such special meeting the county board shall hear evidence offered by the applicant and other persons and shall find and determine by a majority vote of the county board members-elect whether the lake and lake shore created by the flowage or the river in its natural state offers greater recreational facilities and scenic beauty value for the larger number of people. The county clerk shall forthwith certify such finding and determination to the department. The jurisdiction and findings of each county board

fects in the June 23 hearing and the findings, conclusions, and order of the examiner. That petition was denied. The Omernicks then sought judicial review of the DNR proceeding pursuant to Chapter 227, Stats. Shortly thereafter, the DNR petitioned the Marathon county circuit court for an order enforcing the hearing examiner's October 26, 1976, order. There ensued a procedural imbroglio which eventually resulted in the consolidation of the Chapter 227 review proceeding and the enforcement proceeding before Judge Richards. During the course of the review proceedings, the Omernicks sought permission to make certain additions to the record on review pursuant to secs. 227.18, 227.19, and 227.-20, Stats. The subject matter of the proposed new evidence included the constitutionality of the August 7, 1975, search warrant, the propriety of maintaining concurrent criminal and administrative actions against the Omernicks, and numerous other claimed irregularities at the June 23, 1976, DNR hearing, as well as additional evidence relative to the navigability of the two waterways involved and the environmental impact of the presence of the unauthorized structures.

After several hearings on these and other matters, the circuit court remanded both the enforcement action and the review proceeding to the DNR for further testimony, concluding that there was not substantial evidence in the record to support the examiner's findings relative to the navigability of the Little Wolf River and Holt Creek or relative to who actually placed the challenged structures upon the stream beds. Pursuant to discretion granted to the trial court under sec. 227.18, Stats., the court also found that the search warrant was

shall apply to that part of the proposed dam and flowage which is within the county."

issued without probable cause and that any evidence obtained under the warrant should be stricken by the examiner.

After another round of motions relative to the circuit court's remand order, the DNR appealed from the circuit court order. The court of appeals reversed the order of the circuit court, concluding that there was substantial evidence in the record on review to support the examiner's findings. On the question of the legality of the search warrant, the court of appeals concluded that, since it was not raised by the Omernicks in their petition for rehearing before the DNR, it was improperly raised and considered in the circuit court Chapter 227 review proceedings. The Omernicks petitioned this court for a review of the court of appeals' decision, and the DNR cross-petitioned for a review of certain jurisdictional questions relating to the interrelation of Chapter 227 procedures with the Rules of Civil Procedure set forth in Chapter 801 *et seq*.

Before this court the Omernicks raise the following issues:

I. Whether the court of appeals erred in holding that the search warrant issue was improperly considered by the circuit court;

II. Whether the court of appeals erred in concluding there was substantial evidence in the record on review to support the examiner's finding that the two waterways in question were navigable in fact;

III. Whether the DNR was barred from initiating the administrative proceeding against the Omernicks because of the pendency of criminal actions initiated by the state against the Omernicks;

IV. Whether the DNR properly initiated the proceedings against the Omernicks under sec. 30.03(4)(a), Stats. 1973;[8]

---

[8] Sec. 30.03(4)(a), Stats. 1973, provides:

V. Whether the failure of the DNR to promulgate rules regarding standards for the determination of navigability denied the Omernicks due process of law.

The Omernicks seek to have this case remanded to the circuit court for Marathon county for a determination on a variety of questions not passed upon by that court.

This case has been pending in administrative agencies and courts of this state for nearly five years. What started out as a fairly simple matter has become an undertaking of monumental proportions. The parties have compiled a record which, in size and complexity, is the legal counterpart of the fabled Gordian knot. We are not being called upon to decide why this case has taken the course it has, but it is appropriate that we preface our consideration of the issues raised herein by observing that the matter commenced with an administrative hearing at which the petitioners, by their own choice, did not appear. Much of what followed can be charac-

---

"(4) (a) Whenever there comes to the attention of the department a possible violation of the statutes relating to navigable waters, or a possible infringement of the public rights therein, and its appears to the department that the public interest may not be adequately served by imposition of penalty or forfeiture, the department may proceed as follows, either in lieu of or in addition to such other relief as may be provided by law. The department may, upon at least 10 days' notice, conduct a hearing respecting such violation or infringement, pursuant to ch. 227 and issue an order directing the parties responsible therefor to perform or refrain from performing such acts as may be necessary to fully protect and effectuate the interests of the public in the navigable waters. If any person fails or neglects to obey such an order while the same is in effect, the department may request the attorney general to institute proceedings for the enforcement of the department's order and it is the duty of the attorney general to conduct such proceedings in the name of the state. Such proceedings shall be brought in the manner and with the effect of proceedings under s. 111.07 (7)."

terized as an effort by the petitioners to build the defense that might have been made had they appeared and to resist the momentum of the DNR's uncontested case.

## I. *The Search Warrant Issue*

The petitioners' objection to the search warrant issued on August 7, 1975, to DNR fisheries biologist Max Johnson, is that it was issued without probable cause. The court of appeals declined to rule on the merits of this claim because the petitioners, in failing to raise the issue in their petition for rehearing before the DNR, were precluded from raising it for the first time at the trial court. In so holding the court of appeals relied upon *Cobb v. Public Service Comm.,* 12 Wis.2d 441, 107 N.W.2d 595 (1961). *Cobb* involved a challenge by a number of municipalities to a Public Service Commission order approving a plan by the Chicago & North Western Railway Company to cut back its rail services in Wisconsin. The petitioners sought to amend their petition to review to assert the unconstitutionality of the statutes relied upon by the railroad in its effort to have the plan approved. The trial court denied the motion to amend the petition for review on the ground that the petitioners had failed to assert the unconstitutionality of the two statutes in their petition for rehearing before the PSC and thus were barred by sec. 196.405, Stats. 1959, from raising the issue at the trial court in a Chapter 227 review. We held in that case that, when a statute provides that issues not raised in a petition for rehearing shall not be considered in a petition for judicial review, the prohibition applies to constitutional questions.

The petitioners argue that the *Cobb* decision is wrong because permitting administrative agencies to pass upon constitutional questions violates the essential separation of legislative and judicial responsibilities contained in the Wisconsin and federal constitutions. Arguing that the hearing examiner was powerless to take any action upon a constitutional objection to the search warrant, the petitioners assert that, in raising the question for the first time at the trial court level, they were raising it at the earliest possible time before a competent tribunal.

We believe the petitioners' interpretation of *Cobb* is incorrect. Although in *Cobb* we said, "[t]he purpose of a rehearing statute, including constitutional questions, is to enable the administrative agency to correct any errors in the proceedings before it," 12 Wis.2d at 458, this language should not be taken to suggest either that administrative agencies are authorized to pass upon every constitutional question, or that the only constitutional issues which need be raised before an administrative agency are those which the agency has the authority to resolve. It was clear when we decided *Cobb* that administrative agencies could not determine the constitutionality of legislative enactments. *Wendlandt v. Industrial Comm.*, 256 Wis. 62, 67, 39 N.W.2d 854 (1949). *See also: Warshafsky v. The Journal Co.*, 63 Wis.2d 130, 147, 216 N.W.2d 197 (1974). In addition, because an administrative agency is a creature of the legislature, it may not invalidate a judicially issued search warrant. However, constitutional questions may arise under other circumstances where an administrative agency does have authority to deal with them. *See, e.g., Nodell Inv. Corp. v. Glendale,* 78 Wis.2d 416, 426–27, 254 N.W.2d 310 (1977). Therefore, while *Cobb* cannot be viewed as authorizing unlimited administrative determination of constitutional issues, neither can it be

considered an absolute bar to administrative considera-
tion of constitutional issues in a proper case.

As for those types of constitutional issues which an
administrative agency is not empowered to resolve,
*Cobb* should not be taken to mean that where relief is
unavailable the issue need not be raised. Certain dicta
in *Wendlandt* might suggest a contrary view, but we
believe *Cobb* reflects a fundamental policy that parties
to an administrative proceeding must raise known is-
sues and objections and that all efforts should be direct-
ed toward developing a record that is as complete as
possible in order to facilitate subsequent judicial review
of the record under sec. 227.20, Stats. That policy, ap-
plicable in this case as it was in *Cobb,* requires that
those constitutional issues be raised even though the
administrative agency is without power to decide them.

Moreover, our commitment to this position is strength-
ened by the general scheme of Chapter 227 as it relates
to judicial review of administrative decisions which
generally contemplates circuit court review of the rec-
ord developed before the agency. Sec. 227.20, Stats.;
*Wisconsin's Environmental Decade v. Public Service
Comm., 79* Wis.2d 161, 170, 255 N.W.2d 917 (1977). An
exception to this general rule was introduced by Chap-
ter 414, Laws of 1975, creating sec. 227.12(7), which
provided:

"If an application for rehearing is filed under this
section, the person filing the application may not initiate
a proceeding in a reviewing court based on any ground
not set forth in an application for rehearing, unless good
cause is shown to the court for failure to present the
ground to the agency in the petition for rehearing."

Although the subsequent repeal of that section by Chap-
ter 208, Laws of 1979, has no effect upon this review,
even that section would not have permitted the petition-
ers to raise the search warrant issue without first hav-

ing raised it in their petition for rehearing before the DNR.

■

The petitioners contend that good cause was shown under sec. 227.12(7), Stats., for the circuit court to consider the search warrant issue. The only reason offered by the petitioners for failing to raise the search warrant issue on the petition for rehearing is their belief that the hearing examiner was not empowered to treat constitutional questions. While the petitioners' conclusion that they could get no relief is correct, the good cause exception upon which a party could gain review of a ground not presented to the agency does not include a known ground which was capable of being raised at the administrative hearing or before the DNR. The validity of the search warrant was a known ground capable of being raised at the administrative proceedings and therefore does not qualify as a ground subject to permissive review for good cause under sec. 227.12(7).

The circuit court indicated that its consideration of the search warrant issue was within the discretion granted to it by sec. 227.18, Stats. In *Wisconsin's Environmental Decade v. Public Service Comm.*, 84 Wis.2d 504, 533, 267 N.W.2d 609 (1978), we said: "If the record submitted to the court is for any reason incomplete or inadequate, it is the duty of the opposing party to have the record properly supplemented so that the court can fairly and completely consider the issues presented." Sec. 227.18 only gives the court the discretion to allow additions to and corrections of the record to aid the court in considering the merits of the issues raised at the administrative hearing or before the DNR. Because the petitioners did not raise the search warrant issue before the hearing examiner or the DNR, the issue could not be considered by the reviewing court under the authority of sec. 227.18. Therefore, we conclude the

court of appeals was correct in declining to consider the search warrant issue.

## II. *Navigability*

In order for an unauthorized structure or deposit to constitute a violation of Chapters 30 and 31, Stats., it must be placed or located upon a navigable waterway. Sec. 30.10(2), Stats. 1973, states that "[a]ll streams, sloughs, bayous and marsh outlets, which are navigable in fact for any purpose whatsoever, are declared navigable to the extent that no dam, bridge or other obstruction shall be made in or over the same without permission of the state." The test of whether a stream is navigable in fact was established by this court in *Muench v. Public Service Comm.*, 261 Wis. 492, 506, 53 N.W.2d 514, 55 N.W.2d 40 (1952) : "any stream is 'navigable in fact' which is capable of floating any boat, skiff, or canoe, of the shallowest draft used for recreational purposes." The DNR hearing examiner found that both Holt Creek and the Little Wolf River were streams navigable in fact. On review this finding must be upheld if it is supported by substantial evidence in the record. Sec. 227.20(6), Stats.

In applying the substantial evidence test, this court has stated that:

"The substantial evidence test :
" ' "should be construed to confer finality upon an administrative decision on the facts when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable man, acting reasonably, *might* have reached the decision; but, on the other hand, if a reasonable man, acting reasonably, *could not* have reached the decision from the evidence and its inferences then the decision is not supported by substantial evidence and it should be

set aside.' " [Citation omitted.] *Copland v. Department of Taxation*, 16 Wis.2d 543, 554, 114 N.W.2d 858 (1962). [Emphasis in original.]"

*Holtz & Krause, Inc. v. DNR*, 85 Wis.2d 198, 204, 270 N.W.2d 409 (1978). Moreover, the reviewing court will neither weigh the evidence nor pass upon the credibility of the witnesses, *City of Superior v. ILHR Department*, 84 Wis.2d 663, 666, 267 N.W.2d 637 (1978), nor will it, under this standard, upset an agency's finding even if it may be against the great weight and clear preponderance of the evidence. *Chicago & North Western Railroad v. Labor & Industry Review Comm.*, 98 Wis.2d 592, 608, 297 N.W.2d 819, 826 (1980); *Holtz & Krause, supra; DeGayner & Co. v. DNR*, 70 Wis.2d 936, 939, 236 N.W. 2d 217 (1975).

In their challenge to the examiner's finding of navigability, the petitioners argue that sec. 30.12, Stats. 1973, requires that the determination of navigability must relate to the time at which the structure or deposit is actually placed in the bed of the waterway. The examiner found that the dam was constructed "sometime in 1968," and the petitioners argue that there is no evidence of navigability prior to or as early as that date and that navigability in fact may not be determined by retrospective inferences.

At the hearing testimony was given by Harry Borner, a DNR special investigator for the Bureau of Law Enforcement. Borner testified that he had worked for the DNR since mid-1953, during which time he estimated he had conducted about two hundred investigations under Chapters 30 and 31, Stats., and had conducted "probably" fifty tests to determine the navigability in fact of various waterways. He testified that he became familiar with the Omernick property, and specifically Holt Creek and the Little Wolf River, in 1965 and had, over the years, occasioned to be on the Omernick property "probably a hundred times or more." On October

27, 1970, Borner and Marathon County District Attorney Daniel LaRocque navigated the Little Wolf River by canoe from a point several miles upstream of the Omernick property downstream through the Omernick property to the Marathon County-Wood County line. Relative to this particular canoe trip, a transcript of testimony from a 1972 DNR water diversion permit hearing was introduced in which Borner testified that, except for heavy growth of vegetation from the side banks and occasional sawn trees across the waterway, he and LaRocque, with a combined weight of over 300 pounds, had no problem navigating the stream in a 15-foot canoe. Also introduced into evidence were 1971 decisions of the Marathon county and circuit courts, issued in conjunction with an action against Ray Omernick for unlawful diversion of water from the Little Wolf River, in which the courts concluded that the Little Wolf River was navigable in fact.

Borner also testified to having observed navigation on Holt Creek on three occasions. On August 24, 1969, Borner observed Warden Gruber and Special Warden Wendt navigate Holt Creek through the area of the tractor fill (the deposit) and the upper stream crossing "with relative ease" after a period of nineteen days without rainfall. A transcript of portions of a 1971 DNR water diversion permit hearing was introduced in which Borner testified that at the 1969 navigation of Holt Creek the water depth varied from six inches to two to three feet. Borner also testified to having observed navigation on Holt Creek on November 11, 1970, by Gruber and LaRocque. The transcript of the 1971 permit hearing contained additional testimony by Borner to the effect that the November 11, 1970, navigation of Holt Creek commenced at the northern-most edge of the Omernick property and proceeded downstream. At the 1971 permit hearing, LaRocque testified that this

trip extended approximately two miles through the Omernick property, during which he observed that the stream was as wide as 20 or 25 feet and that it ranged in depth from nine inches to three to four feet, with an average depth in excess of one foot.

The third instance of navigation on Holt Creek observed by Borner occurred on May 10, 1971, at which time Gruber and Warden Wnek navigated it by canoe at a point below the dam where the creek flows through property adjacent to the Omernicks. Borner testified that Gruber and Wnek did not navigate through the Omernick property on that occasion but portaged to a point where the creek reentered the neighboring property. A copy of a 1971 Marathon county circuit court decision was placed in evidence regarding a contempt action against Ray Omernick for violation of an order enjoining him from diverting water from Holt Creek. In that opinion the court concluded that Holt Creek was a navigable stream. Borner also testified that he had observed Holt Creek prior to the placement of the dam, the tractor fill, and the crossings, and he considered it to have been navigable then.

We believe that on this evidence and the inferences which arise from it a reasonable man, acting reasonably, could have reached the conclusion that the Little Wolf River was navigable in fact and that Holt Creek was navigable in fact in 1968, contemporaneously with the construction of the dam. Accordingly, the finding of navigability by the hearing examiner must be upheld.

III. *Propriety of Proceeding Under Sec. 30.03 (4), Stats. 1973*

The petitioners argue that the entire DNR proceeding was improperly brought under sec. 30.03(4) (a), Stats.

1973. That section, they assert, contains two prerequisites to the initiation of proceedings thereunder: reasonable promptitude in proceeding after discovery of the alleged violations, and a showing that a forfeiture or penalty would not adequately serve the public interest.

We are not persuaded that the language, "[w]henever there comes to the attention of the department a possible violation of the statutes relating to navigable waters," places a limitation upon the time within which the department must initiate action under this section. Rather, the word "whenever" should be read as introductory in the sense that it introduces the particular circumstance under which the department may proceed, namely, awareness of a possible violation, accompanied by a departmental opinion that the public interest will not adequately be served by the imposition of a fine or penalty. Nor do we believe that the departmental determination that the imposition of a fine or penalty will not adequately serve the public interest is a proper subject of proof upon which the department must make a showing. The language, "and it appears to the department that the public interest may not be adequately served," expresses a departmental prerogative based upon its appraisal of the possible statutory violation. The statute does not require, as a matter of fact, that the public interest *will not* be adequately served by a penalty or forfeiture, but only that it appears so to the department. Proof of such an appearance, if it could be described as proof, would amount to self-serving testimony virtually impossible to rebut. Accordingly, we reject the petitioners' argument that the department must make a showing that penalties are inadequate to protect the public interest as a prerequisite to proceeding under sec. 30.03 (4) (a), Stats. 1973.

IV. and V.  *Concurrent Criminal Proceedings and Absence of DNR Rules Regarding Navigability*

Neither of these issues was raised by the petitioners in their petition for rehearing before the DNR. For the reasons expressed previously in our treatment of the search warrant issue, we decline to consider them.

Finally, the petitioners contend that they are entitled to a ruling upon each issue raised in their petition for judicial review under Chapter 227, Stats. We have carefully reviewed the petition for judicial review as to those issues preserved for review which have not heretofore been discussed, and we conclude that they are without merit and do not warrant our consideration.

*By the Court.*—The decision of the court of appeals is affirmed.

BEILFUSS, C. J., took no part.