Urban P. VAN SUSTEREN, Petitioner-Appellant,

v.

Wisconsin DEPARTMENT OF REVENUE,
Respondent-Petitioner.

Supreme Court

*No. 87-1981. Argued January 25, 1990.—Decided April 23, 1990.*

(Also reported in 453 N.W.2d 889.)

For the respondent-petitioner the cause was argued by *Gerald S. Wilcox,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the petitioner-appellant there was a brief by *Urban P. Van Susteren,* Appleton, and oral argument by *Greta Van Susteren* and *Milliken, Van Susteren and Canan,* Washington, D.C.

CALLOW, WILLIAM G., J. This is a review of a published decision of the court of appeals, *Van Susteren v. Revenue Dep't,* 147 Wis. 2d 581, 433 N.W.2d 248 (Ct. App. 1988), which reversed an order of the circuit court for Outagamie county, Dennis G. Montabon, circuit judge. The order of the circuit court affirmed an order of the Wisconsin Tax Appeals Commission (the Commission) that upheld the penalty imposed by the Wisconsin Department of Revenue (the Department) against Urban P. Van Susteren (Van Susteren) under sec.

71.11(6)(b), Stats. 1983-84.[1]

We begin by setting forth the facts of this case. Van Susteren, now deceased, was a life-long resident of Wisconsin and served as a judge in Outagamie county from 1965 until 1984. Van Susteren had a well-established record of filing his income tax returns late. Between 1972 and 1978, he managed to file only one state income tax return on time:[2]

| Year of Return | Date Filed |
| --- | --- |
| 1972 | January 15, 1974 (late) |
| 1973 | April 15, 1974 (timely) |
| 1974 | May 1976 (late) |
| 1975 | November 8, 1977 (late) |
| 1976 | November 8, 1978 (late) |
| 1977 | April 1979 (late) |
| 1978 | April 1980 (late) |

In some of these years a refund was due to him from the state.

For the years in question, 1979 through 1982, Van Susteren did not manage to file his income tax returns on time. In early 1981, the Department discovered that it had not received Van Susteren's 1979 return. As a result, the Department assigned one of its special tax agents to conduct a non-filer investigation of Van Susteren. The tax agent sent Van Susteren a letter informing him that he was under investigation for failing to file an income tax return for the year 1979 and requesting

---

[1] Any reference in this opinion to sec. 71.11(6)(b), Stats., is to the 1983-84 statutes.

[2] Any reference in this opinion to Van Susteren's income tax returns is to his Wisconsin income tax returns. This opinion is not concerned with Van Susteren's federal returns.

that he appear at the tax agent's office on April 7, 1981. In response to this letter, Van Susteren called the tax agent, at which time the tax agent told Van Susteren to bring his completed 1979 income tax return to the April 7 meeting. Van Susteren appeared at the April 7 meeting but did not bring the completed 1979 return with him, agreeing to file it by May 15, 1981. This return was not filed until November 18, 1981, making it approximately seventeen months late after taking into account the sixty-day extension that Van Susteren had obtained. Realizing that his 1979 return was late, Van Susteren paid the interest and penalty he owed because the return was late, along with the amount of the tax due, when he filed the return.[3]

Sometime after Van Susteren filed his 1979 return, the tax agent discovered that the 1980 return had not been filed. Therefore, on May 28, 1982, the tax agent sent a letter requesting that Van Susteren file his 1980 return and that he file his 1981 return, if he had not done so already. Because these returns had not been received by June 29, 1982, the tax agent sent a follow-up letter in which the tax agent again requested that Van Susteren file his 1980 and 1981 returns. Van Susteren filed the 1980 return on October 1, 1982, approximately eighteen months late, and paid the tax due and the interest and penalty for late filing when the return was filed.

On October 6, 1982, the tax agent sent a letter to Van Susteren in which the agent acknowledged the filing of the 1980 return and requested that the 1981 return be filed within thirty days. The tax agent sent Van Susteren a follow-up letter on January 5, 1983, because Van Susteren had not yet filed the 1981 return. Van Susteren filed his 1981 return in early April 1983, approximately

---

[3]The Wisconsin Statutes have interest and penalty provisions for late filers.

one year late. He paid the tax owed and the interest and penalty for late filing when the return was filed.

Van Susteren's 1982 return was filed in early February 1984, approximately ten months late. The amount of tax owed and the interest and penalty for late filing were paid when the return was filed.

It is thus apparent that during this four-year period, 1979 through 1982, Van Susteren continued his pattern of filing his income tax returns up to eighteen months late.

In February 1983, prior to the filing of the 1981 and 1982 returns, a criminal complaint was filed against Van Susteren, apparently charging him with willfully failing to file his 1979, 1980, and 1981 returns on time in violation of sec. 71.11(41), Stats. 1983-84. Van Susteren was found guilty on all three counts.

After Van Susteren's conviction for willfully failing to file on time, the Department conducted a field audit of Van Susteren's returns for the years 1979, 1980, 1981, and 1982, the product of which was an additional tax assessment against Van Susteren for those years. The Department imposed additional income tax of $311.50 and interest of $124.43. The Department also imposed a penalty of $3,545.75. This appeal centers on the imposition of the penalty.

The penalty was imposed pursuant to sec. 71.11(6)(b), Stats. Section 71.11(6)(b) provides, in part, as follows:

> **(6)** ATTEMPT TO DEFEAT OR EVADE TAX; INCREASED ASSESSMENT.
>
> . . . .
>
> (b) With respect to the calendar year 1969 or corresponding fiscal year and subsequent calendar or fiscal

years, any person failing to make an income . . . tax report or making an incorrect report with intent, in either case, to defeat or evade the income . . . tax assessment required by law, shall have added to the tax an amount equal to 50% of the tax on the entire underpayment.

The Department followed the recommendation of the tax agent in deciding to impose the penalty against Van Susteren for the years 1979 through 1982. The tax agent's recommendation was based upon four factors: Van Susteren's well-established practice of filing very late returns; the substantial amount of tax owed by Van Susteren after withholding; Van Susteren's knowledge and experience in tax matters; and Van Susteren's continuing failure to file timely returns, knowing that he was under criminal investigation and having been advised of the possible penalties. The fact that certain adjustments were made to Van Susteren's income, which resulted in Van Susteren owing additional income tax and interest, had no bearing on the imposition of the penalty. The penalty thus stemmed wholly from Van Susteren's failure to file timely returns.

Van Susteren filed a petition for redetermination with the Department on February 20, 1985, objecting only to the imposition of the 50 percent penalty under sec. 71.11(6)(b), Stats. Van Susteren's primary contention was that there was no evidence that he intended to defeat or evade the tax law. On August 16, 1985, the Department denied the petition for redetermination and informed Van Susteren of his right to appeal to the Commission.

On October 17, 1985, Van Susteren appealed the denial of the petition for redetermination to the Commission. The Commission affirmed the Department's denial of Van Susteren's petition for redetermination,

thus upholding the penalty imposed pursuant to sec. 71.11(6)(b), Stats. The Commission concluded that the Department had met its burden of proof on the issue of whether Van Susteren's failure to file timely income tax returns in the years 1979 through 1982 was with the intent to defeat or evade the income tax assessment in violation of sec. 71.11(6)(b).

Pursuant to Chapter 227 of the Wisconsin Statutes, Van Susteren sought judicial review of the decision of the Commission. The circuit court for Outagamie county affirmed the decision of the Commission.

Van Susteren appealed, and the court of appeals reversed the circuit court. The court of appeals concluded that the reasons the Department relied upon in imposing the penalty were insufficient to meet its burden to show that Van Susteren failed to file income tax returns in timely fashion with the intent to defeat or evade the income tax assessment. The court of appeals thus held that the imposition of the penalty under sec. 71.11(6)(b), Stats., was improper. *Van Susteren,* 147 Wis. 2d at 584-88. This court accepted the Department's petition for review.

The first issue we must address is whether the provision under which Van Susteren was penalized, sec. 71.11(6)(b), Stats., applies to the case at hand. Van Susteren argues that the plain language of this provision clearly shows that it is inapplicable here. Van Susteren notes that the provision provides that the penalty may be imposed upon any person "failing to make an income . . . tax report or making an incorrect report" with the intent to defeat or evade the tax assessment. Van Susteren stresses that he always filed income tax reports, albeit late reports, and that he always paid the amount of tax due along with any interest and late filing penalty. According to Van Susteren, because the penalty provi-

sion at issue mentions only those failing to file returns and those filing incorrect returns, not those filing untimely returns, the provision has no application to this case.

Although Van Susteren's argument is appealing, it must fail in light of this court's decision in *McKinnon v. Dep't of Taxation*, 261 Wis. 564, 53 N.W.2d 169 (1952). In *McKinnon*, in each year from 1936 to 1945, the taxpayer applied for an extension of time to file his state income tax return. After being granted the extension for the particular year, the taxpayer made no effort to file the return. In February 1947, the Department of Taxation threatened the taxpayer with so-called doomage assessments, thus prompting the taxpayer to file the belated returns.[4] After the returns were filed, an additional penalty was imposed upon the taxpayer under sec. 71.09(9), Stats. 1945, the forerunner to the provision at issue here. *McKinnon*, 261 Wis. at 564–65, 567.

According to the briefs filed in this court in the *McKinnon* case, the taxpayer, focusing on the word "defeat," claimed that the penalty provision applied only in cases where there was an utter failure to file because the word "defeat" could only mean a permanent prevention of the tax assessment, not a temporary delay by untimely filing. Noting that he had actually filed correct

---

[4]The so-called doomage assessments were made pursuant to sec. 71.09(6), Stats. 1945, which provided as follows:

In case of the failure on the part of any person to make a report of income within the time or in the manner prescribed by law, the department of taxation or assessor of incomes may enter an assessment against said person upon ten days' notice in writing in a sum of not less than $500.00. Such notice shall be served by mail. After the tax on such assessment has been entered on the assessment roll the person assessed shall be forever barred from questioning the correctness of the same in any action or proceeding.

returns, the taxpayer argued that the penalty provision was irrelevant.

This court rejected the taxpayer's argument and, in the process of doing so, defined the word "defeat" broadly. We stated that the tax assessment could be defeated even though the taxpayer had not completely avoided the obligation to file a return. We reasoned that confining the meaning of the word "defeat" to those situations where the taxpayer utterly failed to file a return would render meaningless the other important responsibilities the law placed upon taxpayers. We concluded that a tax assessment could be defeated in cases where there was an attempt on the part of the taxpayer "to prevent the successful operation of a lawful tax system by disregarding the responsibility placed upon the taxpayer." *Id.* at 568.

In *McKinnon,* therefore, we determined that the penalty provision could apply to a case where the taxpayer disregarded the requirement that a timely return be filed. In order to sustain Van Susteren's argument that the penalty provision has no application to untimely filing, we would have to overrule *McKinnon,* a step that we decline to take.

■

Because we conclude that the penalty provision could be applied to untimely filers, we must decide whether there is sufficient evidence in the record to sustain the Commission's finding that Van Susteren failed to file timely returns with intent to defeat the tax assessment for the years in question, 1979 through 1982.[5]

---

[5] According to the Department, there is no claim that Van Susteren is guilty of tax evasion; rather, the issue is whether he intended to defeat the tax.

In order for the Commission to impose a penalty under sec. 71.11(6)(b), Stats., the burden is on the Department to prove intent to defeat the income tax assessment by clear and convincing evidence. *Platon v. Dep't of Taxation,* 264 Wis. 254, 256, 58 N.W.2d 712 (1953). Our review of the Commission's decision to impose the penalty is pursuant to Chapter 227 of the Wisconsin Statutes. The Commission's decision to impose the penalty is based upon its finding of fact that Van Susteren's failure to file timely returns in each of the years in question was with the intent to defeat the income tax assessment. Under sec. 227.57(6), Stats., we may set aside an agency decision if we find that the decision is based upon a finding of fact that is not supported by substantial evidence in the record. "The substantial evidence test is whether reasonable minds could arrive at the same conclusion [reached by the agency]." *Daly v. Natural Resources Board,* 60 Wis. 2d 208, 219, 208 N.W.2d 839 (1973), *cert. denied,* 414 U.S. 1137 (1974). Our review of the Commission's decision in this case is thus confined to determining whether the evidence in the record on the issue of intent to defeat the tax assessment is such evidence that a reasonable person could find clear and convincing. In *McKinnon,* we defined defeating the tax assessment broadly to include preventing or frustrating the successful operation of the tax system.

In upholding the imposition of the penalty, the Commission found it significant that Van Susteren was convicted of willfully failing to file timely returns for the years 1979, 1980, and 1981 in violation of sec. 71.11(41), Stats. 1983–84. The Commission also had before it the factors upon which the Department based the imposition of the penalty. The Commission noted that Van

Susteren had filed late returns for many years. The Commission further noted that he had filed late during the years in question in which a substantial amount of tax was owed, having received notice of the criminal investigation. According to the Commission, Van Susteren clearly had knowledge of the filing deadlines because of his experience as a lawyer and a judge.

There is no dispute that there was late filing in this case, and Van Susteren admits that he was late in completing virtually every task that he undertook during his life. But the question here is whether the record provides adequate support for the Commission's conclusion that the late filing was with the intent to defeat the tax assessment. A review of the record shows that Van Susteren always filed returns, albeit late returns, even in the years prior to the years in question where there was apparently no prodding by the Department or any criminal investigation. Between 1972 and 1982, the latest any return was filed was eighteen months. Over this time period, his returns were filed late in years in which he was due a refund and, when taxes were owed, a check for the amount of tax due, along with any interest and penalty for late filing, always accompanied the return. Little significance can be given to the fact that a substantial amount of tax was due during the years in question because the record shows that Van Susteren always ultimately paid his taxes and the interest and penalties for late filing. Nor is there anything especially significant about Van Susteren's experience as a lawyer and a trial judge. From the standpoint of the tax laws, lawyers and judges are treated no differently than any person possessing knowledge of the filing requirements.

On the issue of intent, therefore, there is only an undisputed pattern of late filing, and, under the circumstances of this case, this pattern is insufficient to sustain

the Commission's finding that Van Susteren intended to prevent or frustrate the successful operation of the tax system. The record shows that, for the years 1972 through 1982, Van Susteren simply relied upon the standard rules requiring penalty and interest payments for late filing, and paid the penalty and interest owed under these rules when he filed the returns.

The facts in this case stand in stark contrast to the facts of *McKinnon,* where this court concluded that the evidence was sufficient on the issue of intent to defeat. In *McKinnon,* in each year from 1936 through 1945, the taxpayer applied for an extension of time to file his state income tax return and then made no further effort to file the return after the extension for that particular year was granted. The Department finally extracted the returns from the taxpayer in 1947 after threatening him with so-called "doomage" assessments. *McKinnon,* 261 Wis. at 567. For the years 1931, 1932, and 1933, it was not clear whether the taxpayer ever filed returns, and he did not pay the taxes owing in those years until 1942. *McKinnon v. Wisconsin Dep't of Taxation,* 3 W.B.T.A. 384, 391–92 (1948).[6]

We conclude that, although the penalty provision, sec. 71.11(6)(b), Stats., could be applied to untimely filers, it was improper to apply it here. There is insufficient evidence in the record to sustain the Commission's finding that Van Susteren failed to file timely returns with the intent to defeat the tax assessments for the years in question. Therefore, the Commission was in error when it sustained the penalty imposed under sec. 71.11(6)(b) to Van Susteren's net state income tax over

[6]The dissent chooses to ignore the obvious and significant differences between the case at hand and *McKinnon.*

and above that which was withheld for the years 1979, 1980, 1981, and 1982.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). The majority opinion reverses the Wisconsin Tax Commission's decision without justification and contrary to the established law and facts. I dissent.

Each year (except one) for more than a decade, Urban Van Susteren filed his state income tax return late and at times filed only after persistent prodding from the Revenue Department. In 1983, a jury convicted him of willfully failing to file tax returns for the years 1979–82, the years in issue in this case. The Commission then found by clear and convincing evidence that Van Susteren *intended to defeat the income tax assessment* in violation of sec. 71.11(6)(b), Stats. 1983–84, and *McKinnon v. Department of Taxation,* 261 Wis. 564, 53 N.W.2d 169 (1952). Van Susteren was obligated to pay an additional $3,545.75.

In *McKinnon,* the court interpreted the statutory phrase "intent to defeat." The state must prove that the defendant intended to thwart the income tax system for each of the years in question, not that the defendant failed to pay taxes or intended to defraud the state of revenue. The *McKinnon* court stated:

> The word 'defeat' is not so confined in its meaning as to apply only to a complete accomplishment on the part of the taxpayer to escape his lawful responsibility. Such interpretation would make useless important processes of the law in taxation matters. Under the circumstances present in this case, *the attempt to prevent the successful operation of a lawful tax system by disregarding the responsibility*

607

*placed upon the taxpayer brings his acts within the meaning ascribed to the word by the board of tax appeals and the circuit court.* 261 Wis. at 568. (Emphasis supplied.)

The Wisconsin Tax Appeals Commission has frequently and consistently applied the *McKinnon* decision to numerous taxpayers for nearly forty years.[1]

The Wisconsin income tax is based upon the principle of self-assessment. The income tax system works as long as taxpayers report the amount and nature of their income honestly and timely. Unless taxpayers file returns in a timely fashion, the Revenue Department cannot be certain to collect taxes and cannot determine the accuracy of payments. Taxpayers do not discharge their legal responsibilities by waiting for the state to discover that no return was filed. The Wisconsin income tax system would be impossible to administer if taxpayers could file returns whenever it suited their convenience, paying only, as Van Susteren did, interest for

---

[1]*See, e.g., Micheli v. Wisc. Dept. of Taxation,* 5 WBTA 110 (1963); *Howard v. Wisc. Dept. of Taxation,* 5 WBTA 128 (1963); *Christiansen v. Wisc. Dept. of Taxation,* 5 WBTA 176 (1964); *Morgan v. Wisc. Dept. of Taxation,* 5 WBTA 180 (1964); *Roggensack v. Wisc. Dept. of Taxation,* 5 WBTA 185 (1964); *La Conte v. Wisc. Dept. of Taxation,* 5 WBTA 188 (1964); *Cretton v. Wisc. Dept. of Taxation,* 6 WBTA 1 (1965); *Sellinger v. Wisc. Dept. of Taxation,* 6 WBTA 39 (1965); *Tesnow et al. v. Wisc. Dept. of Taxation,* 6 WBTA 57 (1965); *Bastis v. Wisc. Dept. of Rev.,* 7 WTAC 127 (1968); *Lauer v. Wisc. Dept. of Rev.,* 8 WTAC 3 (1969); *Sharp v. Wisc. Dept. of Rev.,* 8 WTAC 126 (1970); *Dock v. Wisc. Dept. of Rev.,* 8 WTAC 20 (1970); *Wheeler v. Wisc. Dept. of Rev.,* 9 WTAC 99 (1972); *Klug v. Wisc. Dept. of Rev.,* 9 WTAC 177 (1972); *Lewis v. Wisc. Dept. of Rev.,* 9 WTAC 320 (1973); *Blask v. Wisc. Dept. of Rev.,* Docket No. I-10, CCH ¶ 202-438 (August 21, 1984); *Zamecnik v. Wisc. Dept. of Rev.* Docket No. I-10913, CCH ¶ 202-142 (November 1, 1985).

failing to pay taxes on time and a $5 penalty for filing late, and the state had to bear the increased administrative costs of pursuing each person individually to obtain compliance with the statutory filing requirements. *McKinnon v. Wisconsin Dept. Taxation,* 3 WBTA 384 (1948). The civil penalty provided in sec. 71.11(6) serves as a safeguard to protect the state's revenue and to reimburse the state in part for the expenses and losses resulting from the taxpayer's failure to live up to his responsibilities.

The Commission, the fact-finder in this case, could not look into Van Susteren's mind to discover his intent, and it did not have to accept Van Susteren's explanation of his intent. The Commission had to determine Van Susteren's intent from all the evidence and all the circumstances surrounding the failure to file.

A reviewing court does not determine the taxpayer's intent. A court examines the Commission's finding of intent (a finding of fact) to determine if it is supported by substantial evidence. Section 227.57(6), Stats. 1983–84.[2]

---

[2]Section 227.57(6), Stats. 1983–84, provides:

> If the agency's action depends upon any fact found by the agency in a contested case proceeding, the court shall not substitute its judgement for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.

Section 227.57(6) limits a court's review of the Commission's decision in this case to determining whether the Commission's findings of fact are supported by substantial evidence. According to an extensive body of case law, "substantial evidence" means evidence that a reasonable person could accept to support the finding of the agency. *See, e.g., Sanitary Transfer & Landfill, Inc. v. DNR,* 85 Wis. 2d 1, 14-15, 270 N.W.2d 144 (1978); *Madison*

I conclude that the Commission's finding of intent is supported by substantial evidence and should be affirmed. The Commission could reasonably infer from the evidence that Van Susteren knew the consequences of a taxpayer's repeatedly filing returns late and filing returns only after the Revenue Department expended resources to prod taxpayer to file. The consequences are clear: the thwarting (defeating) of the self-assessment processes of the tax law and the successful operation of the state income tax system. The Commission could further reasonably find that Van Susteren intended the natural, probable and usual consequences of his conduct. The Commission's finding of intent is thus "a legitimate, logical inference from undisputed facts." *McKinnon, supra,* 261 Wis. at 568.

While the majority opinion concludes that this case and the *McKinnon* case can be distinguished, I believe that the facts in the two cases are substantially similar.

In *McKinnon* and in the case at bar, both taxpayers failed to file their returns timely for many years. Both taxpayers received extensions to file for at least some years. Neither taxpayer made an effort to hide his income. No fraud or duplicity was involved in either case. In both cases, the respective taxpayer could offer no substantial excuse for failure to file returns in a timely manner other than preoccupation with work. Both taxpayers had a long history of late filing and filed their returns and paid their taxes in full only after the Department of Revenue intervened: McKinnon faced a

---

*Gas and Electric v. Public Service Comm.,* 109 Wis. 2d 127, 133, 325 N.W.2d 339 (1982).

The Commission expressly stated that its finding of Van Susteren's intent was supported by clear and convincing evidence. *Platon v. Dept. of Taxation,* 264 Wis. 254, 258, 59 N.W.2d 712 (1953).

"doomage" fee; Van Susteren faced criminal charges. In both cases the taxpayer was a lawyer; in this case the taxpayer was also a judge.

The only distinction Van Susteren and the majority opinion draw between this case and the *McKinnon* case is that McKinnon's period of delinquency for filing some of the returns was longer than Van Susteren's. The *McKinnon* court expressly rejected the argument that a short period of delay will not support a finding of intent under the statute. *McKinnon, supra,* 261 Wis. at 568-69. The *McKinnon* court concluded that the finding of intent under the statute was to be deduced from the taxpayer's entire course of conduct of late filing.

Because there is no significant distinction between the two cases, I conclude that the majority opinion has overruled *McKinnon* sub silentio and has rendered sec. 71.11(6)(b), Stats. 1983-84, now numbered sec. 71.83(1)(b), Stats. 1987-88, ineffective as a tool against chronically late filers. If the Department of Revenue is to have an effective tool against taxpayers who intentionally and repeatedly file their tax returns late and only after the Department expends state funds to push them into filing, the legislature must act. I therefore call this case to the attention of the Revisor of Statutes and the Law Revision Committee. Sections 13.83(1)(c)1, 13.93(2)(d), Stats. 1987-88.

The majority opinion fails to apply the legal standards this court set forth nearly forty years ago. I dissent.

I am authorized to state that Justice Donald W. Steinmetz and Justice William A. Bablitch join in this dissent.